[729 NYS2d 697]

ADRIANA VINK et al., Individually and as Shareholders in the Right of RIVERCROSS TENANTS' CORPORATION, Appellants, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL et al., Respondents.

COMMITTEE FOR MAINTENANCE AND PRIVATIZATION FAIR PLAY AT RIVERCROSS et al., Appellants, et al., Petitioner, v OTIS JONES et al., Respondents.

First Department, August 23, 2001

### APPEARANCES OF COUNSEL

*Robert Chira* of counsel, New York City (*Robert Chira & Associates*, attorneys), for appellants.

*Katherine E. Timon* of counsel, New York City (*Marion R. Buchbinder* on the brief; *Eliot Spitzer, Attorney General* of State of New York, attorney), for New York State Division of Housing and Community Renewal and another, respondents.

*Kimberly J. Bull* of counsel, New York City (*Robert I. Cantor* on the brief; *Cantor, Epstein, Simon & Degenshein, L. L. P.*, attorneys), for Rivercross Tenants Corp., respondent.

*Jacques F. Rose* of counsel (*Hartman, Ule, Rose & Ratner, L. L. P.*, attorneys), for appellants.

*Bruce H. Wiener* of counsel (*Eduardo A. Fajardo* on the brief; *Fischbein Badillo Wagner Harding*, attorneys), for Rivercross Tenants' Corporation, respondent.

**OPINION OF THE COURT**

TOM, J.

These consolidated appeals concern Rivercross, a building on Roosevelt Island owned as a Mitchell-Lama cooperative corporation. As a limited-profit housing company, Rivercross's ownership and operation is governed by the Private Housing Finance Law. For present purposes, tenant rentals are governed by the income of individual tenants, with "over-income" tenants obliged to pay rental surcharges proposed by the company/co-op board and approved by the Division of Housing and Community Renewal (DHCR). DHCR is a defendant in the shareholder-derivative action, and a respondent in the CPLR article 78 proceeding. Petitioner Committee in the article 78 proceeding is an unincorporated membership association of tenants who are not over-income tenants. Plaintiffs in the derivative suit are two shareholders who appear to be over-income tenants.

These underlying proceedings arose from two board actions of defendant Rivercross Tenants' Corporation. First, it imposed an across-the-board increase in maintenance charges, as to all classes of tenants, regardless of income. Certain tenants who are not over-income tenants contend that Rivercross must seek to meet expenses by maximally surcharging over-income tenants before charging other tenants. Second, Rivercross imposed a surcharge on over-income tenants, which the Committee contends was insufficient but which the over-income tenants contend was unauthorized for reasons discussed below. In these consolidated appeals we are asked to address whether DHCR was obligated to compel Rivercross to enact a surcharge schedule imposing the maximum surcharge allowed by law on over-income shareholders, and whether DHCR had the authority to direct Rivercross to promulgate a new surcharge schedule with any increase.

As noted, Rivercross is a Mitchell-Lama cooperatively owned building on Roosevelt Island. Although various Mitchell-Lama buildings may operate as rentals, and do so on Roosevelt Island, Rivercross was created as a corporation in which shares would be sold to residents who, as stockholders, would govern their own affairs subject to the requirements of the Mitchell-Lama Law, codified as article II of the Private Housing Finance

Law. This status was conferred by virtue of a ground lease executed in 1977 but deemed to have commenced in 1973. Article II of the Private Housing Finance Law created and governed such "Limited-Profit Housing Companies." The policy underpinning the statute was the recognition that the "rehabilitation or redevelopment of slum ghettos and other areas into sound healthy balanced viable communities, the enhancement of the physical environment, health, and social well-being of the inhabitants and the expansion of their social and economic opportunity require among other measures the attraction to the neighborhoods of varying economic classes in addition to persons of low income." (Private Housing Finance Law § 11-a [3].) Although this policy was directed mostly at maintaining a stratum of middle, rather than high, income people, higher income residents were not to be excluded from these buildings. Although applicants were initially limited to persons whose total annual income was no more than seven times the annual rent or carrying charges for the units they would occupy, once they were accepted as tenants, if their incomes rose, so would their rents (see, Private Housing Finance Law § 31 [2]). In that situation, they were subject to surcharges, devised as a portion of the base rent. Income limits were established for Mitchell-Lama housing. Residents whose income exceeded those limits were to "pay a rental surcharge in accordance with a schedule of surcharges to be promulgated by the company with the approval of the commissioner or the supervising agency, as the case may be, provided, however, such rental surcharge shall in no event exceed fifty per centum of the existing rent" (Private Housing Finance Law § 31 [3]). Whether the surcharge must be up to 50% and whether Rivercross, or DHCR, was responsible for setting the rate, is in dispute.

The Legislature also wanted to ensure that such housing remained economically viable, and hence allowed for rental increases. In particular, DHCR "upon * * * its own motion, or upon application by the company or of a stockholder * * * may vary such rental rate from time to time so as to secure, together with all other income of the company, sufficient income for it to meet within reasonable limits all necessary payments to be made or projected to be made during the term of a lease by the said company, of all expenses including fixed charges, sinking funds, reserves and dividends on outstanding stock as authorized by the commissioner or the supervising agency, as the case may be" (Private Housing Finance Law § 31 [1] [a]). These rental rates, which are distinct from the surcharges to be

superimposed on them pursuant to section 31 (3), were to be imposed on a per room basis.

Rivercross's initial offering plan provided for the payment of income-based surcharges by stockholder residents whose incomes exceeded the maximum income limits for admission in accordance with a schedule that addressed various income levels. Hence, for residents whose income was from 101% to 105% of the maximum income limit, the surcharge was 1% of the annual rent. The schedule then escalated in 5% increases up to residents whose incomes were 146% to 150% of the maximum income limit, who were to pay a surcharge of 10% of the annual rent. Although over-income tenants thus were paying an additional charge based on income, the rents neverthe- . less remained attractive and provided an inducement to such residents to continue residing in the community and in the City. The surcharge still remained well below the maximum surcharge, presently 50%, allowed by the statute. As such, the surcharge for over-income Rivercross residents always remained subject to modification.

Rivercross, like any cooperative corporation, conducts annual budgetary reviews and must ensure that income equals expenses, with expenses satisfied by the monthly carrying charges assessed for that year. In August of 1998, Rivercross filed an application with DHCR for a 5.5% increase in maintenance charges to cover operating expenses, and especially to avoid purported operating deficits of $140,000 in 1998 and $300,000 in 1999. This increase was to apply to all classes of shareholders. If approved, this would have meant that shareholders, previously paying $5.1694 per share per month (i.e., $251.94 per rental room per month) would be paying $5.4537 per share per month (i.e., $265.80 per rental room per month), which works out to slightly less than an additional $14 per rental room per month.

DHCR reviewed Rivercross's proposed budget in light of the application for the increase. It is undisputed that no procedural rights were violated. Notice was provided to shareholders and DHCR, pursuant to its own regulations, conducted a meeting in January 1999 to receive comment on the proposed increase. Rivercross's board representatives, petitioners and other shareholders, and DHCR staff all had an opportunity to attend and provide comment. DHCR extended the comment period for an additional month at petitioners' request. Several of the arguments advanced in this litigation were originally articulated at the meeting or during the comment period. Petitioners

argued that increases should be levied first against over-income tenants by revising the surcharge schedule and imposing up to the maximum statutory surcharge against them. These shareholders argued for a new schedule ranging from 5% to 50%, keyed to differing income levels. Rivercross argued that DHCR lacked the authority to compel Rivercross to impose any particular schedule of surcharges, but was empowered only to approve or disapprove the cooperative corporation's application setting forth its own fee requests. DHCR countered Rivercross's point by stating that it has the power to direct Rivercross to do so, but countered petitioners' point by contending that it need not exercise that power to compel Rivercross to charge the maximum available statutory surcharge.

One of the issues before us, then, is whether DHCR enjoys such power and, if so, whether it is permissive or mandatory. Although Rivercross initially elected to adhere to the schedule, capped at 10%, of surcharges imposed against over-income shareholders that had been in place for years, DHCR recommended that the surcharge schedule be increased. During March 1999, the Rivercross board met with DHCR on this issue, then conducted a shareholders meeting on March 23, 1999. In corresponding with DHCR, Rivercross noted its intention of increasing the lower end of the surcharge schedule to 2% and the cap to 20%. DHCR approved the measure in spirit and indicated that imposition of the top rate would be "improvident." The change was actually made effective upon DHCR approval in July 1999. By order issued March 25, 1999, DHCR subsequently approved a carrying charge increase of $5.3799 per share, equal to an increase of $10.26 per rental room per month, bringing the new monthly carrying charges to $262.20 per rental room.

This article 78 proceeding against Rivercross and DHCR, by its Commissioner, followed. Petitioners contend that DHCR acted arbitrarily and capriciously by refusing to direct Rivercross to charge over-income shareholders the maximum statutory surcharge of 50%. For this they rely on DHCR's own regulation, promulgated at 9 NYCRR 1727-4.2, which states that "[t]he following schedule *shall* be used to determine surcharge rentals" (subd [d]; italics added), which is followed by a schedule setting forth a maximum surcharge of 50%. In dismissing on the basis of Private Housing Finance Law § 31 (3), the Supreme Court read the legislative purpose of section 31 (3) as intending that surcharge rates originate with the cooperative's board (*compare*, § 31 [1] [a] regarding rental

rates), and be subject to agency review for appropriateness to the particular circumstances necessitating board action. The court, in support of its statutory interpretation, also considered the policy underpinnings of the issue from the perspective that a cooperative board, democratically elected, is in the best position to assess the need for and potential effect of surcharge increases, but that the agency ought to retain discretion over the approval process. As such, "the approval of the increased 20 percent surcharge cap and the failure to impose a 50 percent cap had a basis in logic and thus cannot be deemed arbitrary and capricious." The court also found the board decision defensible on the basis of the *Levandusky* business judgment rule governing judicial review of cooperative board decisions (*Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530).

Meanwhile, the derivative action was commenced by other shareholders against Rivercross and DHCR. These plaintiffs sought declaratory and injunctive relief, arguing that the imposition of a new surcharge schedule violated their rights as shareholders insofar as the Private Housing Finance Law does not accord the agency the right to "direct" and "determine" that Rivercross submit a revised surcharge schedule. These shareholders also argued that the cooperative board had been impeded in exercising its proper business judgment. In dismissing for failure to state a cause of action, the Supreme Court noted that it had previously held that the actions of DHCR and Rivercross in creating the increased surcharge schedule were consistent with the Private Housing Finance Law, and especially that both the cooperative and the agency were intended by the Legislature to have interlocking, rather than unilateral, capacities, and that that ruling was stare decisis as to the derivative action. Insofar as the surcharge schedule was properly modified, plaintiffs had no actionable claim. Again, the court found that the board's action was defensible under the *Levandusky* (*supra*) business judgment rule.

These rulings are correct.

Under standard canons of statutory construction, the plain meaning of the statutory phrasing must be honored by the agency, and by the courts. If the meaning is unclear, legislative intent must be discerned. In analyzing the various parts of a statute, "a statute or ordinance must be construed as a whole and * * * its various sections must be considered together and with reference to each other" (*People v Mobil Oil Corp.*, 48 NY2d 192, 199). It also is well established that an

agency is to be accorded wide deference in its interpretation of its own regulations and, to a lesser extent, in its construction of the governing statutory law. More specifically for DHCR, "the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable" (*Matter of Gaines v New York State Div. of Hous. & Community Renewal*, 90 NY2d 545, 548-549). However, an agency cannot engraft additional requirements or assume additional powers not contained in the enabling legislation (*Matter of Schenkman v Dole*, 148 AD2d 116, 121, *lv denied* 75 NY2d 704). Rather, we presume that any regulation is in accord with the stated purpose of the enabling statute (*see, Silberman v Biderman*, 735 F Supp 1138).

These doctrines are particularly applicable here. A fair application of the basic principles compels the conclusion that DHCR did not act arbitrarily or capriciously or in violation of its own regulations or of its enabling statute. DHCR rationally construes the Private Housing Finance Law to allow Mitchell-Lama cooperatives to be responsible for creating their own individual surcharge schedules, in recognition of the business and practical factors unique to each such development. As the Supreme Court sagely noted, as a general principle, a democratically elected cooperative board of directors enjoys an especially intimate appreciation of the budgetary, business and practical nuances of the building's finances and how best to apportion them. In this respect a cooperative board may act from a vantage far superior to that of a more distant agency, even an agency such as DHCR which, while retaining oversight authority on the matter of amending surcharge schedules, has, in this case, eschewed any greater role in micro-managing these essentially financial issues. Nor is there any evidence in this record that Rivercross's board acted unlawfully, irrationally, in bad faith or on the basis of conflicts of interest or any other impropriety, so that agency action cannot be said to ratify or countenance impropriety by Rivercross's board. As such, our focus is really on the agency's power and conduct.

The statute does not state, nor evince legislative intent, that all Mitchell-Lama cooperatives must follow a schedule with a maximum 50% surcharge. Rather, such a static interpretation would render meaningless the provisions of the statute requiring the housing company to promulgate a schedule of surcharges with DHCR approval, a construction we decline to apply. Similarly, the rate schedule set forth in 9 NYCRR 1727-

4.2 (d) must be construed as advisory rather than mandatory, except as to the maximum statutory cap, in view of the provisions of the preceding subdivision, section 1727-4.2 (c). That subdivision states that "[r]ent schedules are prepared by the housing company, subject to division approval. Such schedules should provide sufficient income to meet the costs of efficient project operation, including reasonable reserves and debt service." The very discretion accorded by this subdivision is inconsistent with petitioners' construction of section 1727-4.2 (d) as imposing a hard and fast schedule. In this light, it cannot be said that DHCR's interpretation of its regulations is arbitrary and capricious, especially, as noted, when the interpretation is consistent with the legislative goals of, and powers conferred by, its enabling statute. Moreover, to the extent that petitioners seek mandamus to compel performance, the discretionary, rather than ministerial, nature of the agency action defeats such relief (*Matter of Hamptons Hosp. & Med. Ctr. v Moore*, 52 NY2d 88, 96).

In the derivative action, the plaintiffs complain that only Rivercross, and not DHCR, may impose a surcharge. First, plaintiffs cannot gainsay that Rivercross's board, and not DHCR, set the new schedule. Thus, although empowered to vary rents (Private Housing Finance Law § 31 [1] [a]), the agency did not do so. Rather, plaintiffs complain that the agency effectively accomplished this end by directing Rivercross to promulgate the new schedule. However, plaintiffs' claim of coercion is belied by the record. DHCR, in its advisory role, recommended that the board take another look at the efficacy of increasing surcharges that were statutorily permissible but which had not been revised for decades. This is hardly coercion. To whatever extent DHCR may be construed as having directed Rivercross to undertake a revision of the schedule, promulgation of the actual rates was left to Rivercross. Nor does this relationship in any manner eviscerate the applicability of the business judgment rule.

Accordingly, the order of the Supreme Court, New York County (Nicholas Figueroa, J.), entered August 18, 2000, which granted the motions of defendants DHCR and Rivercross Tenants' Corporation to dismiss the complaint for failing to state a cause of action, and order, same court and Justice, entered November 10, 1999, which dismissed petitioners' application brought pursuant to CPLR article 78, seeking to compel respondent DHCR to require respondent Rivercross Tenants' Corporation to create a surcharge schedule scaled to impose a

50% surcharge cap, to be imposed on certain over-income tenants, and to annul DHCR's determination dated July 19, 1999 approving a schedule with a 20% cap, should be affirmed, without costs.

WILLIAMS, J. P., MAZZARELLI, LERNER and RUBIN, JJ., concur.

Orders, Supreme Court, New York County, entered August 18, 2000 and November 10, 1999 affirmed, without costs.