*856 Order and judgment (one paper), Supreme Court, New York County (Marilyn Shafer, J.), entered February 6, 2009, denying the petition and dismissing the proceeding brought pursuant to CPLR article 78 to annul so much of a determination of respondent New York State Division of Housing and Community Renewal (DHCR) as revoked a major capital improvement rent increase for four apartments in petitioner’s building, reversed, on the law, without costs, the proceeding reinstated, the petition granted to the extent of annulling DHCR’s determination, and the matter remanded to DHCR for further proceedings consistent with this decision.
In this article 78 proceeding, petitioner Langham Mansions LLC (the owner) undertook an extensive project to replace more than 860 oversized and nonstandard windows in its landmark apartment building located at Central Park West, between 73rd and 74th Streets, Manhattan. The building comprises 59 apartments, 19 of which are subject to rent regulation.
The owner received approval from the Landmarks Preservation Commission to replace the existing windows. In June 2005, the owner filed an application with the DHCR pursuant to Rent Stabilization Code (9 NYCRR) § 2522.4 for a major capital improvement rent increase based on the owner’s expenditure of more than $1.5 million to replace the windows in the building.
On December 14, 2005, in opposition to the rent increase, 135 Central Park West Tenants’ Association (the tenants’ association) submitted an answer to the owner’s application, asserting that some of the new windows were defective. The tenants’ association attached a report from a licensed engineer who had inspected the windows in 10 of the building’s 19 rent-regulated apartments in November 2005. The report stated the new windows were difficult to open and close and they required “undue force in pulling up and pushing down the sash.”
The owner responded that all windows were functioning properly. By order dated May 19, 2006, the DHCR approved the major capital improvement increase of $39.16 per room per month for the rent-regulated units, effective June 2006. The DHCR also approved a retroactive charge.
In response to the rent increase, the tenants’ association filed a petition for administrative review (PAR). Contesting the PAR, the owner disagreed with the engineer’s report, and attached the report of an independent contractor who had visited 11 of *857 the 19 rent-regulated units, and stated that minor repairs were required in some of the units.
The DHCR itself inspected the units in question in early 2008. It found no defects in four units; one unit was vacant. Of the remaining units, one had windows that were missing some moldings, and four units had some windows that were difficult to open and close. Of the more than 860 windows replaced in the building, the DHCR found defects affecting 6 windows out of a total of 50 windows in the four units. Subsequently, the DHCR granted the PAR in part, annulling and permanently revoking the rent increases for the four units.*
The owner commenced this article 78 proceeding in August 2008, seeking annulment of the DHCR’s determination. The owner claimed that its initial request for a major capital improvement rent increase was properly granted, and that the DHCR acted arbitrarily and capriciously in revoking the increase where only 6 of a total of 50 windows in the four subject units had problems, and the problems were minor and could be repaired.
The owner argued that, in similar cases the DHCR had not revoked a rent increase but had simply suspended the effective date of the increase until the agency determined that proper repairs had been made. Furthermore, the owner asserted that the DHCR had failed to explain why it had reached a different result in this case.
By order and judgment, entered February 6, 2009, the court confirmed the determination on the PAR and dismissed the petition. As to the owner’s contention that the window problems in the four apartments were minor, the court found that an evaluation of the problems’ severity involved the agency’s expertise, which was entitled to deference. The court further found that the DHCR’s decision to revoke the rent increase rather than suspend it was not arbitrary and capricious because the owner when provided with the opportunity to fix windows, had not done so.
We now reverse for the reasons set forth below. It is well settled that “[j judicial review of administrative determinations is limited to whether the determination was affected by an error of law or was arbitrary and capricious or an abuse of discretion.” (Matter of City of New York v Plumbers Local Union No. *858 1 of Brooklyn & Queens, 204 AD2d 183, 184 [1994], lv denied 85 NY2d 803 [1995]; CPLR 7803 [3]; see also Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009], citing Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974].) Further,, the Court of Appeals has held that an administrative agency’s determination is arbitrary and capricious when it “ ‘neither adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts’ ” (Matter of Lantry v State of New York, 6 NY3d 49, 58 [2005], quoting Matter of Charles A. Field Delivery Serv. [Roberts], 66 NY2d 516, 517 [1985]).
On appeal, the DHCR argues that its determination is rational because it is consistent with other decisions where the agency revoked an increase. However, the owner correctly asserts that the determination is arbitrary and capricious because the DHCR neither indicated a reason for its drastic penalty nor adhered to prior rulings in similar cases where only a few units were affected.
Indeed, the record contains copies of DHCR rulings that directly support the owner’s assertions. Specifically, in Matter of Little & Breslow (DHCR Admin Review docket No. NC430029RP [Aug. 2, 1999]), the DHCR order and opinion denying a petition for a PAR stated the Division’s policy in terms that could not be clearer: “The Commissioner notes that it is Division Policy to suspend [a major capital improvement] rent increase for individual apartments until repairs of defects are completed (rather than revoking the increase as suggested by the tenant-petitioners).” (Emphasis added.)
In those cases where the DHCR has denied an increase specifically because of problems with windows, this Court has upheld such determinations where the windows were completely defective and/or where a substantial number of the new windows were defectively installed (see e.g. Matter of Weinreb Mgt. v New York State Div. of Hous. & Community Renewal, 305 AD2d 207 [2003]; Matter of Duett, L.L.C. v New York State Div. of Hous. & Community Renewal, 269 AD2d 235 [2000]; Simkowitz v New York State Div. of Hous. & Community Renewal, 256 AD2d 51, 52 [1998] [windows in 18% of the units were found to have “substantial” defects]).
Contrary to the dissent’s sweeping generalization which implies that all “the new windows in four of these apartments were inferior,” the windows at issue are located in just four units, and of the total of 50 windows in the four units, only six were found to have problems. The record moreover shows that *859 the six inferior windows are to be found in the apartments as follows: apartment 4SF (five-room apartment)—one inferior window out of a total of 12 windows; apartment 5SF (five-room apartment)—two inferior windows out of nine; apartment 7SC (nine-room apartment)—two inferior windows out of 20; apartment PHN (five-room apartment)—one inferior window out of nine.
Moreover, the record reflects that there was no conclusion by the DHCR that the windows could not be repaired or that they could not serve their intended function if minor repairs were performed by the owner. The DHCR findings were based on an inspection that was made at least three years after the initial installation and the inspection report fails to conclude that any of the windows inspected were installed defectively or in an unworkmanlike manner. Hence, based on its own stated policy, the DHCR should have suspended rather than revoked the rent increases for the four units.
In any event, we find that simple common sense dictates suspending an increase rather than revoking it permanently. Suspension encourages the owner to rectify the problems if the owner wishes to ultimately recoup its investment in the windows. Revocation, on the other hand, is a result that benefits nobody when an owner has no incentive to make repairs or adjustments. Concur—Andrias, J.P, Saxe, Catterson and AbdusSalaam, JJ.
Freedman, J., dissents in a memorandum as follows: I would affirm the judgment of the Supreme Court denying the petition and dismissing the proceeding brought pursuant to CPLR article 78 to annul so much of a determination of respondent New York State Division of Housing and Community Renewal (DHCR) as revoked a major capital improvement rent increase for four apartments in petitioner’s building.
The record demonstrates that DHCR did not act arbitrarily or abuse its discretion in finding that the window installations in the four apartments at issue were sufficiently defective so as to not justify a major capital improvement (MCI) rent increase for those apartments (see Matter of Weinreb Mgt. v New York State Div. of Hous. & Community Renewal, 305 AD2d 207 [2003]).
An administrative agency is to be accorded wide deference in its interpretation of its own regulations (Vink v New York State Div. of Hous. & Community Renewal, 285 AD2d 203, 209-210 [2001]). In this case, based on the sequence of events, DHCR’s determination to revoke rather than suspend the MCI increase for the affected apartments was not arbitrary or capricious, so *860 as to warrant judicial review (Matter of City of New York v Plumbers Local Union No. 1 of Brooklyn & Queens, 204 AD2d 183, 184 [1994], lv denied 85 NY2d 803 [1995]).
After receiving reports from a licensed engineer hired by the tenants’ association indicating that certain windows required “undue force” to open, DHCR’s inspection on two specific occasions disclosed that the new windows in four of these apartments were inferior to those that they replaced because they were extremely difficult to open and leaked air causing drafts. One window that was difficult to open led to a fire escape. The inspections took place some three years after the windows had been installed, after tenants had made a number of complaints, and after petitioner hired a company that had tried to fix the windows and had claimed to have repaired them. Thus it appears that minor repairs would not have been sufficient to remedy the defects.
The majority’s determination that DHCR’s denial of rather than suspension of the MCI increase is irrational is not borne out by the record. The cases cited by petitioner and referred to by the majority, that favor suspension rather than denial, are ones in which building owners either had not been afforded the opportunity to remedy the defects or had completed the repairs by the time they filed their administrative appeals.
This Court has previously upheld DHCR determinations denying MCI increases for entire buildings where replacement windows were defectively installed (see Matter of Weinreb Mgt., 305 AD2d at 208; Matter of Duett, L.L.C. v New York State Div. of Hous. & Community Renewal, 269 AD2d 235 [2000]; Simkowitz v New York State Div. of Hous. & Community Renewal, 256 AD2d 51, 52 [1998]). Thus, the denial of the MCI increase for just these four apartments would be consistent with precedent.

 At the time, the rents for the four units ranged from $2,192.75 for a five-room apartment on the penthouse floor to $2,962.25 for a nine-room apartment with 20 windows in a building where the average decontrolled rent is $22,000 a month.