ANTOINETTE SPALLINA, as Conservator of the Property of GAETANA MANUSE, Conservatee, Respondent, v FRANK GIANNOCCARO et al., Appellants.

Fourth Department, December 16, 1983

**APPEARANCES OF COUNSEL**

*Michael A. Rose* (*Ted Barraco* of counsel), for appellants.

*Noto, Rudin & Berlowitz* (*Michael Rudin* of counsel), for respondent.

**OPINION OF THE COURT**

DENMAN, J.

In this action by the conservator of Gaetana Manuse, who was adjudicated incompetent in December, 1979 at the

age of 82, conservator, who is conservatee's niece, seeks to recover money transferred by the conservatee to defendants Frank and Mary Ann Giannoccaro between July 5 and July 24, 1979 in the sum of $73,505.48; to impose a constructive trust in that amount; or to recover that sum on a theory of undue influence.

After joinder of issue, defendants were deposed. Frank Giannoccaro testified that he had befriended the conservatee in 1978 while installing a roof on her house, that he visited her fairly regularly thereafter, invited her to his home for family dinners, and that he accompanied her to the bank on several occasions on which she withdrew money from various accounts and gave the funds to Giannoccaro to be used for his children's education. He admitted that he had received $27,600. He invested the funds in stock but later sold the stock and spent the proceeds on gambling, horses and trips.

Mary Ann Giannoccaro testified that she had accompanied Manuse to a bank on one occasion, had been given two checks for $10,000 each to be used for her children's education, and that the funds were still in her account.

On the basis of the Giannoccaros' testimony, copies of bank records indicating withdrawals from various accounts of Manuse with corresponding deposits in the accounts of Frank and Mary Ann Giannoccaro, and medical affidavits of Manuse's physicians indicating that she was incompetent at the time of the transfers, plaintiff moved for summary judgment or, in the alternative, for partial summary judgment in the amount of $47,600, the sum which defendants admitted receiving from the conservatee. Plaintiff additionally sought leave to serve an amended complaint to include a cause of action for conversion and a demand for punitive damages. In opposition to plaintiff's motion and in support of their cross motion to dismiss the complaint for failure to state a cause of action, defendants submitted personal affidavits asserting a close relationship with the conservatee, claiming that the transfers were gifts, and stating that to their knowledge the conservatee's behavior was normal and that she had no serious medical problems.

Special Term granted partial summary judgment to plaintiff in the amount of $47,600 on the first and second causes of action, denied defendants' cross motion to dismiss and denied plaintiff's motion for leave to amend her complaint.

Defendants take the position that plaintiff's complaint fails to state a cause of action but that, if it does, there are triable issues of fact precluding the entry of summary judgment, most notably, the issue of Manuse's mental capacity at the time of the transfers. Defendants' arguments find no support on the record.

Plaintiff's first cause of action, although not well articulated, states a claim for unjust enrichment. Indeed, the circumstances here present a classic illustration of the type of case which calls forth the principles of restitution: "A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy" (*Miller v Schloss,* 218 NY 400, 407; *Saunders v Kline,* 55 AD2d 887, 888, later app 75 AD2d 531, mod on other grounds 53 NY2d 658; see, also, *Paramount Film Distr. Corp. v State of New York,* 30 NY2d 415, 421, cert den 414 US 829).

Plaintiff's complaint coupled with the affidavits and accompanying documents in support of the motion for summary judgment establish that conservatee withdrew all of her funds in various bank accounts during a three-week period in July, 1979 and that defendants admit receiving $47,600 of those funds. Approximately three weeks after the last transfer, the conservatee was found wandering the streets completely nude and in a confused condition as a result of which she was hospitalized and,

shortly thereafter, adjudicated incompetent. The physicians attending the conservatee stated by way of affidavit that she is suffering from cerebral arteriosclerosis and senile dementia of a degenerative nature causing permanent irreversible loss of intellectual capacity. The conservatee has exhibited those symptoms for several years prior to her hospitalization and has been incompetent to handle her personal and financial affairs for several years and at least since 1978.

Those facts are clearly sufficient to establish a prima facie case that defendants have been unjustly enriched and that plaintiff is entitled to restitution (see *Indig v Finkelstein,* 29 AD2d 851, affd 23 NY2d 728). An obligation was thus imposed on defendants to produce evidentiary proof in admissible form sufficient to require a trial of those questions of fact on which they rest their claim or to provide an excuse for their failure to do so (see *Zuckerman v City of New York,* 49 NY2d 557, 562; see, also, *Ferber v Sterndent Corp.,* 51 NY2d 782). In an attempt to fulfill that obligation, defendants submitted affidavits in opposition to the motion for summary judgment, asserting that the transfers were gifts from the conservatee and alleging that she was a family friend who intended the funds to be used for their children's education.

The essential elements of a gift are (1) donative intent, (2) delivery, and (3) acceptance (*Matter of Szabo,* 10 NY2d 94, 98; *Matter of Cristo,* 86 AD2d 700, 701) and in order for a gift to be valid, all of the essential elements must be present (25 NY Jur, Gifts, § 9). The element of donative intent presupposes that the donor possesses the mental capacity to make a gift (*Riggs v American Tract Soc.,* 95 NY 503; 25 NY Jur, Gifts, § 11). Inasmuch as plaintiff proffered expert medical evidence tending to establish that the conservatee was not competent at the time of the transfers, it was incumbent upon defendants to come forward with expert medical evidence sufficient to raise a triable issue. Since defendants' affidavits contain only their subjective opinions that the conservatee was "normal", that her "memory was excellent" and that she had no "difficulty in recognizing individuals or objects", those statements are insufficient to raise a triable issue and the

opinions offered by plaintiff's experts are conclusive (cf. *Burton v State of New York,* 90 AD2d 585, 586; *Barker v Bice,* 87 AD2d 908; *Jensen v Casale,* 22 AD2d 994).

Defendants contend that plaintiff's failure to prove that they had knowledge of the conservatee's mental incompetence precluded summary judgment. That argument is unavailing since defendants' knowledge of Manuse's incompetence is completely irrelevant. In an action for unjust enrichment, it is unnecessary to show that the money or other property was obtained by wrongful means (50 NY Jur, Restitution & Implied Contracts, § 5, pp 156-157). Further, it was incumbent upon the defendants to prove the mental capacity and donative intent of the conservatee. This is particularly true on the facts of the instant case in view of the aged and infirm condition of the conservatee which required defendants to submit clear proof of the integrity and fairness of the transaction. "Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from an overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. This doctrine is well settled." (*Cowee v Cornell,* 75 NY 91, 99-100; *Matter of Gordon v Bialystoker Center & Bikur Cholim,* 45 NY2d 692, 698-699.) In light of the expert medical opinion establishing that the conservatee was suffering from degenerative senile dementia at the time of these transfers, defendants' bald assertions that she gave them all of her money as a gift for their children's education but that they had used it on gambling and trips was certainly insufficient to sustain their burden to show that "all was fair, open, voluntary and well understood" (*Cowee v Cornell, supra,* p 100), and partial summary judgment was properly granted in the amount admittedly received by defendants.

Plaintiff's second cause of action for constructive trust and her third cause of action for undue influence are facially defective inasmuch as they fail to set forth the elements of those causes of action. Although our liberal pleading rules have, to a large degree, dispensed with technical pleading requirements (see *Foley v D'Agostino,* 21 AD2d 60), mere conclusory assertions are insufficient to enable defendants to respond. Those causes of action should therefore have been dismissed with leave to replead if plaintiff be so advised.

Plaintiff argues that she should have been granted leave to amend her complaint to plead a cause of action in conversion. Whereas it was clearly error to deny plaintiff's motion, made well before trial, to amend her complaint to assert a cause of action for conversion and punitive damages, she did not file a notice of cross appeal and therefore the issue is not properly before us (*Hecht v City of New York,* 60 NY2d 57).

The orders and judgment should be modified in accordance with this opinion.

SCHNEPP, J. (dissenting). I dissent and vote to reverse the grant of partial summary judgment to the plaintiff. Although the circumstances here may present a classic illustration of the type of case which calls forth the principles of restitution, this is not to say that such restitution should be awarded without a trial. Unlike the majority, it is my view that a triable issue of fact exists regarding the conservatee's mental capacity at the time of the transfers. In the first place, there is a presumption of sanity (*Jones v Jones,* 137 NY 610). Furthermore, an ordinary witness may describe the acts of a person whose sanity is in question and express an opinion whether such acts appeared rational or irrational (Richardson, Evidence [Prince, 10th ed], § 364, p 334). Defendants' affidavits, which are based on personal knowledge, characterize the conservatee's actions as rational and show the existence of a bona fide triable issue of fact. Thus, defendants are under no obligation to seek out medical experts to meet plaintiff's proof.

CALLAHAN, J. P., BOOMER and O'DONNELL, JJ., concur with DENMAN, J.; SCHNEPP, J., dissents and votes to reverse in an opinion.

Orders and judgment modified and as modified affirmed, without costs, in accordance with opinion by DENMAN, J.