OPINION OF THE COURT
Peter M. Wendt, J.
Petitioner has commenced these two consolidated holdover *43 proceedings against residential tenants of premises converted to residential use pursuant to Multiple Dwelling Law article 7-C (Loft Law). For the purposes of this motion to dismiss, the allegations of the petitions must be taken as true. Owner claims to have complied with the safety and fire protection standards of article 7-B of the Multiple Dwelling Law, registered the premises as required, and otherwise "legalized” the premises for residential use. Pursuant to section 286 (3) of the Multiple Dwelling Law, landlord has offered, and tenants have accepted, leases subject to the provisions of the Rent Stabilization Law. If this is so, the Rent Stabilization Law would apply to the subject tenancies. (Multiple Dwelling Law § 286 [3], [13].) Premised on this theory, the owner has claimed the right pursuant to section 2524.4 (a) of the Rent Stabilization Code (9 NYCRR) to recover the two adjacent units for use as a single residence by his daughter, her husband, and their three children. He has sent notices of nonrenewal to both tenants between 150 and 120 days before the expiration of their leases, and has now commenced these proceedings.
Respondents move to dismiss on the ground that the owner has no right to commence an eviction proceeding against tenants whose rent-stabilized status arose from coverage of the premises by the Loft Law. They claim, in effect, that the Loft Law supersedes the Rent Stabilization Law in such case. Tenants thus argue that an owner may not avail himself of the provisions of the Rent Stabilization Code that allow an owner to recover rent-stabilized premises for his own use.
Although tenants are represented by an attorney, their CPLR 3211 (a) (7) motion, not specifically denominated as such, is based entirely on the affidavit of Wallace French, one of the respondents herein. In his affidavit, Mr. French does not claim to be a lawyer, but states that he is a sculptor and set designer. He then proceeds to argue the law throughout his affidavit, without so much as a statement that his attorney has advised him regarding the legal arguments to which he attests under oath. The basis of his claimed familiarity with the applicable law is not stated. The court finds this somewhat disconcerting.
The purpose of the Loft Law is to encourage the legalization of converted interim multiple dwellings (IMD’s). The very term, "interim”, implies that the article 7-C status is transitory, eventually leading to a permanent legal residential status. This status, of course, is residential housing protected by and subject to the rent and eviction regulation of the *44 Emergency Tenant Protection Act of 1974 and the Rent Stabilization Law of 1969. (Multiple Dwelling Law § 286 [3], [13].) "The statute [Multiple Dwelling Law art 7-C] is designed to integrate these uncertain and unregulated residential units, converted from commercial use, into the rent stabilization system in a manner which ensures compliance with the Multiple Dwelling Law and various building codes.” (Blackgold Realty Corp. v Milne, 119 AD2d 512, 515 [1st Dept 1986], affd 69 NY2d 719 [1987].) In Blackgold, the Appellate Division held that the Loft Law was designed to provide for transition of unregulated loft dwelling units into the rent stabilization system and created the classification of "Interim Multiple Dwelling” to permit regulation by the Loft Board during the transition from unregulated status to rent stabilization. The Legislature, by the use of the word "interim”, expressed its intention that the "loft” status of IMD’s would be temporary only. This court does not find persuasive the argument that the Legislature ever intended to permanently deprive individual IMD owners of the right to regain possession for their own use, within the restrictions of the Rent Stabilization Law, once they legalize the premises.
Thus, the tenants herein are now protected by the statutes and regulations that apply to ordinary rent-stabilized apartments. Tenants point to no prohibition against landlord, once he normalizes the status of the building, from availing himself of the eviction provisions of the Rent Stabilization Law and Code, in accordance with the tenant protections built into rent stabilization.
Here, the tenants have received substantial benefit from article 7-C of the Multiple Dwelling Law. Their tenancies were protected while the building was of uncertain status. Now that the premises have been brought up to the required safety and fire standards and otherwise legalized, the dwelling units are subject to rent stabilization. Because of the provisions of section 286 (3) and (13) of the Multiple Dwelling Law, respondents’ tenancies are protected by rent stabilization even though the building apparently contains less than six residential units. (The protections of the Rent Stabilization Law normally only apply to buildings with six or more residential units.)
Respondents claim that the owner’s ability to recover their dwellings for the use of his immediate family pursuant to section 2524.4 (a) of the Rent Stabilization Code would deprive them of their right to "sell” their fixtures pursuant to Multi *45 pie Dwelling Law §286 (6). This is not necessarily the case. The Loft Law is designed ultimately to integrate tenancies into the rent stabilization system. Therefore, the Loft Law and the Rent Stabilization Law are to be read in pari materia. (Matter of Lower Manhattan Loft Tenants v New York City Loft Bd., 66 NY2d 298 [1985].) The laws may be read together and applied to the same multiple dwelling. (Blackgold Realty Corp. v Milne, supra; see, Newmann v Mapama Corp., 96 AD2d 793 [1st Dept 1983].) It does not seem inconsistent for the court to allow landlord to commence an owner occupancy claim under section 2524.4 (a) of the Rent Stabilization Code, and, if he succeeds, to require him to purchase tenant’s fixtures pursuant to Multiple Dwelling Law § 286 (6). At this point, the question is still hypothetical, and will not arise unless landlord succeeds in proving his owner occupancy claim at trial. The court shall decide the issue of whether tenants can require landlord to purchase their fixtures if such question arises. The court does note, however, that in the many years that have passed since tenants have installed the fixtures, their cost is likely to have been amortized.
Petitioner’s attorney also opposes tenants’ motion on the ground of collateral estoppel. He advises this court that in a Supreme Court action commenced by these respondents against this petitioner, Justice Carol E. Huff denied tenants herein declaratory relief and a preliminary injunction. She ruled, "[plaintiffs’ legal argument that the owner of a loft building such as defendant cannot evict a residential tenant in order to occupy the premises for himself or his family is without merit”. (French v Axelrod, Sup Ct, NY County, index No. 17182/89, at 3.) Tenants’ attorney has failed to advise this court of Justice Huff’s decision, even though her clients were plaintiffs and petitioner the defendant in that action.
Collateral estoppel would likely apply here, although Justice Huff’s decision apparently involved the denial of tenants’ motion for a preliminary injunction. However, this court reaches the same conclusion as the Supreme Court I.A.S. Part, for the reasons stated above.
Respondents’ attorneys’ failure to advise the court of Justice Huff’s ruling, obviously pertinent to the proceeding at bar, in an action commenced by respondents against petitioner regarding the subject matter of this very proceeding, is unacceptable. A "litigation history” was provided as part of respondent’s affidavit in support of the motion to dismiss. The court is given a long history of litigation and administrative pro *46 ceedings, yet Justice Huffs decision in French v Axelrod (supra), or even the fact of that action’s existence, is assiduously avoided. Although no sanctions will be imposed at this time, such conduct on the part of an attorney cannot and should not be allowed to pass without comment.
For the above-stated reasons, respondent’s motion is denied. The matter is set down for trial on August 1, 1990, at 9:30 a.m. in Part Q.