OPINION OF THE COURT
Renee R. Roth, S.
*790 This contested, proceeding in the estate of William Jorden to determine the validity of a claim for unpaid rent raises an issue of first impression under article 7-C of the Multiple Dwelling Law (the Loft Law).
Specifically, the question is whether the Loft Law gives the fiduciary of the estate of a deceased tenant a right to recover the value of fixtures added to the premises by the decedent. Petitioner (the landlord) has moved to dismiss a defense based upon such right, as well as all other defenses raised by the executrix, and seeks summary judgment on its claim for rent arrears and legal fees. The executrix in turn has cross-moved for leave to amend her answer by adding a counterclaim.
Decedent died testate on August 30, 2003, survived by two daughters, to whom he left his residuary estate (valued at less than $50,000) in equal shares. Letters testamentary were issued to his daughter Lorraine on January 8, 2004.
At the time of his death, decedent occupied an apartment in petitioner’s building located at 500 Broadway, New York, New York. The building had been an “interim multiple dwelling” within the meaning of the Loft Law until, about two years before decedent’s death, an order issued by the Loft Board upgraded the building to the status of a multiple dwelling subject to rent stabilization (Administrative Code of City of NY § 26-501 et seq.). Such order, dated July 24, 2001 (the Loft Board order), directed the landlord to issue rent-stabilized leases to decedent and three other tenants at specified initial monthly rents (in decedent’s case, some $895). Leases tendered by the landlord pursuant to this order were challenged by decedent and the other tenants in an action for a declaratory judgment in Supreme Court, New York County, where the tenants argued that the leases proposed by the landlord failed to meet certain requirements of the Loft Board order. Such claim was ultimately upheld (Moskowitz v Whitney, Sup Ct, NY County, Jan. 7, 2004, Index No. 602730/02). As a result, no lease was in effect for decedent’s apartment at the time he died.
After decedent’s death, but before Lorraine’s appointment as executrix, the landlord served her with a claim for rent arrears in the amount of some $21,000. After letters testamentary issued (albeit before the date on which the claim for rent could be deemed rejected [SCPA 1806 (3)]), the landlord commenced the present proceeding.
In her answer, the executrix generally denied the landlord’s allegations, challenged this court’s subject matter jurisdiction *791 (CPLR 3211 [a] [2]) and alleged that an action was pending in another court between the same parties for the same relief (CPLR 3211 [a] [4]). The executrix also asserted affirmative defenses, claiming that she had a right to setoffs for the value of fixtures and the amount of decedent’s security deposit and further claiming that the landlord had breached its implied warranty of habitability (Real Property Law § 235-b). Concurrently with service of the answer, the executrix also served the landlord with a demand for a bill of particulars.
Instead of complying with such discovery demand, however, the landlord responded by making the present motion, seeking dismissal of the defenses and asking that the court summarily fix the alleged rent arrears and direct the executrix to pay its legal fees with interest. In her cross motion, the executrix seeks leave to amend her answer by adding a counterclaim for conversion.
It is well established that on a motion for summary judgment the function of the court is to ascertain whether there is any open issue of fact, not to determine such issues (Zuckerman v City of New York, 49 NY2d 557 [1980]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]). The party seeking summary judgment must submit sufficient evidence in admissible form to demonstrate the absence of any material factual issue (Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]).
The executrix’s defenses challenging jurisdiction and alleging the pendency of another action clearly warrant summary disposition. It is by now well settled that this court has jurisdiction to entertain landlord-tenant disputes involving the affairs of a decedent (Matter of Piccione, 57 NY2d 278 [1982]; Estate of Hobbins, NYLJ, Apr. 6, 1999, at 30, col 6; Estate of Valenti, NYLJ, Apr. 19, 1999, at 30, col 3). Moreover, it is undisputed that the related action to which the answer refers has been voluntarily discontinued by stipulation, rendering moot the executrix’s defense based upon such action. Accordingly, these two defenses are dismissed.
Other than to such limited extent, however, summary determination is not appropriate. Even if discovery had been completed and this matter were therefore arguably ripe for summary determination of the fact-driven claim and affirmative defenses, the arrears sought by the landlord could not be calculated on the basis of the present record, which contains no evidentiary support for the amounts alleged and is replete with *792 discrepancies. For example, the landlord claims one amount of total “fixed rent” ($23,700) in the petition, but a different amount (some $19,177) in its motion papers. The issue is further muddled by the dispute between the parties as to whether the landlord prevented the executrix from vacating the apartment between March 16, 2004 (the date on which she formally surrendered the premises) and April 30, 2004 (the date through which rent is claimed). Moreover, the landlord does not explain or document the basis for its claim to monthly rent of some $913, an amount that differs from the monthly rent set by the Loft Board order.
It is noted that the landlord also attempts to use its motion papers to raise a claim to an additional $15,362 in “code compliance adjustments” to which its petition makes no reference and for which it offers neither explanation nor clear evidence (other than a letter apparently relating to another tenant). Nor does there appear to be any better support for the landlord’s claim to “legal fees.” Indeed, in this respect the landlord’s position is somewhat mystifying, given its assertion in one set of papers that its claim to such fees is based upon “the lease” and its further assertion in a later submission that “there is no lease.”
Even if the rent arrears owed were presently calculable, which the foregoing indicates they are not, it would remain to be determined whether the executrix has a statutory right to setoff against them on account of (1) fixtures installed by decedent and left in the apartment upon its surrender (Multiple Dwelling Law § 286 [6]), (2) decedent’s security deposit, and (3) breach of implied warranty of habitability.
The landlord maintains that as a matter of law the executrix cannot claim any right to recover the value of fixtures allegedly installed by decedent.
The parties’ dispute in this connection arises from the circumstance that the apartment in question was initially a “loft.” A loft is raw, open space originally rented for commercial use and by law deemed unsuitable for residential purposes. However, by the early 1980s, it was not uncommon for such premises to have been put to unlawful residential use. The Loft Law was enacted to encourage landlords to legalize such de facto residences and to bring them within the regulatory system that governs residential rentals {see Blackgold Realty Corp. v Milne, 119 AD2d 512, 515 [1986]). Under the Loft Law, the owner of a building could make upgrades that would qualify the premises for a certificate of occupancy (if zoning ordinances al *793 lowed and certain criteria were satisfied). A landlord who embarked upon such loft conversions would be able to charge rent legally to the residential tenants and to recover the costs of such upgrades from them (Mem of Senate Rules Comm, Bill Jacket, L 1982, ch 349).
Although the primary purpose of such statute was to “provide for the transition of unregulated loft dwelling units into the rent stabilization system” (Blackgold Realty Corp. v Milne, supra at 513), parts of the Loft Law still apply to such units once they have become subject to rent stabilization (Axelrod v French, 148 Misc 2d 42, 45 [1990]). The statute remains applicable to the extent that it may give a residential tenant of a former loft special protection not generally available to residential tenants under rent stabilization (Matter of 91 Fifth Ave. Corp. v New York City Loft Bd., 249 AD2d 248 [1998]).
One special protection conferred by the Loft Law is the right of the residential tenant to install fixtures that would make the premises habitable and to recover the fair market value of such fixtures when and if he ceases to be a tenant (Multiple Dwelling Law § 286 [6]; 577 Broadway Real Estate Partners v Giacinto, 182 AD2d 374 [1992]). Section 286 (6) provides in relevant part as follows:
“[A] residential tenant qualified for protection pursuant to this chapter may sell any improvements to the unit made or purchased by him to an incoming tenant provided, however, that the tenant shall first offer the improvements to the owner for an amount equal to their fair market value” (Multiple Dwelling Law § 286 [6]).
The landlord argues, however, that the above provision does not apply to the fiduciary of a deceased tenant’s estate.
Prior comment furnishes only limited guidance on this issue. In 577 Broadway Real Estate Partners v Giacinto (182 AD2d 374 [1992]), the issue was whether a residential tenant had a right of recovery under section 286 (6) where the apartment in question was not his primary residence. In a prior decision of the Appellate Division, First Department (Matter of Lower Manhattan Loft Tenants v New York City Loft Bd., 104 AD2d 223 [1984]), not directly involving section 286 (6), there was dicta to the effect that all of the Loft Law’s protections were intended to be limited to cases of primary residence. Nevertheless, the Appellate Division in Giacinto (supra) held that there was no such limitation for the special purposes of section 286 *794 (6). Noting that such provision “is remedial in nature and is calculated to avoid a windfall to the owner which would result if improvements made by a tenant were permitted to revert to the owner without compensation,” the Court further observed that “[t]he relevant consideration is . . . whether the tenant made or purchased the improvements” (182 AD2d 374, 375 [1992] [citation omitted]).
The question thus is whether the observations in Giacinto with respect to the statute’s purpose are any less applicable here, where a fiduciary of an estate seeks compensation for improvements made or purchased by the decedent to premises that have been surrendered to the landlord. In other words, the issue is whether there is here (unlike Giacinto) some basis for giving the landlord a windfall to the extent such improvements have added value to the landlord’s property.
The only direct comment on this issue is a ruling by an administrative law judge (ALJ) that was adopted by the Loft Board (Matter of 595 Broadway Assoc., OATH Index No. 1083/02, affd Loft Bd. Order No. 2770 [2 of 7 members dissenting]).
The threshold question is whether principles of jurisprudence dictate deference to such agency decision. As the Court of Appeals has observed, “An administrative agency’s interpretation of the statute it is charged with implementing is entitled to varying degrees of judicial deference depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute” (Matter of Gruber [New York City Dept. of Personnel — Sweeney], 89 NY2d 225, 231 [1996]).
Under such standard, courts have given weight to agencies’ decisions, but only on issues requiring “specialized ‘knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom’ ” (Matter of KSLM-Columbus Apts. v New York State Div. of Hous. & Community Renewal, 6 AD3d 28, 35-36 [2004], quoting Matter of Dworman v New York State Div. of Hous. & Community Renewal, 94 NY2d 359, 371 [1999]). Where, however, the issue is one of pure statutory reading and analysis, dependent only on an accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]).
Accordingly, since the present issue involves “pure statutory reading and analysis,” the agency’s ruling in question must be *795 evaluated on its merits without benefit of any presumption of correctness or other special deference.
The administrative decision under section 286 (6), accepted by the Loft Board without discussion, expresses the ALJ’s conclusion that the statute does not allow a fiduciary of an estate to recover the value of improvements furnished by the decedent (Matter of 595 Broadway Assoc., supra). The ALJ proposed that the language of the statute, as well as decisional law, dictated a ruling in favor of the landlord.
First, referring to Giacinto (supra), the ALJ concluded that the absence of a term from section 286 (6) was an “omission” that must be “presumed to be intentional.” But Giacinto’s reference to an “omission” had been appropriate, since the issue there was whether the statute contained a precondition, i.e., primary residence, that was not among its express terms. The issue before the ALJ, however, did not involve the proposed addition of any term to the express language of the statute. The issue was, instead, the meaning of an express term (“residential tenant”), i.e., whether such phrase was broad enough to include the fiduciary of a deceased tenant’s estate.
But as held by our highest court, an ALJ’s resolution of such an issue is not entitled to a presumption of correctness (Kurcsics v Merchants Mut. Ins. Co., supra). Furthermore, the language quoted by the ALJ from Giacinto had supported the First Department’s liberal reading of the statute, which in turn was consistent with the provision’s remedial purpose. Ironically, such passage was used by the ALJ toward a diametrically opposite result, i.e., to justify a restrictive reading.
Second, in attempting to discern what the legislature meant when it used the term “residential tenant” in section 286 (6), the ALJ referred to case law concerning limitations on fiduciaries’ tenancies in relation to a procedural issue (Carnegie Mgt. Co. v Oppenheimer, 2001 NY Slip Op 50070[U] [2001] [a fiduciary was not a necessary party to a holdover proceeding]) or in connection with another statute (Matter of Rubinstein v 160 W. End Owners Corp., 14 NY2d 443 [1989] [General Business Law § 352-eeee]; De Kovessey v Coronet Props. Co., 69 NY2d 448 [1987] [General Business Law § 352-eeee]).
The ALJ appears to have misapprehended the relevance of such cases. Moreover, the best guide to the legislative intent underlying section 286 (6) is the legislative history of the Loft Law. As the Bill Jacket makes clear, the central subjects of the Loft Law were lofts slated for conversion into legalized residen *796 tial space. The term “residential tenant” in such a context would appear to refer simply to the tenant of such premises. Moreover, unlike the ALJ’s reading of the term, a broader reading of the term to include a fiduciary of a residential tenant’s estate conforms to the objective underlying the statute. In other words, for purposes of avoiding a windfall to a landlord (and avoiding a concomitant forfeiture of the tenant’s investment in improvements), it is clearly immaterial whether the person seeking compensation is the tenant who added value to the landlord’s property (thereby depleting his own assets) or, if such tenant has died, the fiduciary who represents such tenant’s depleted estate.
Indeed, the authorities cited by the ALJ only tended to undermine rather than support her rationale. Thus, for example, the De Kovessey case involved claims on behalf of the estates of four decedents who had been “tenants in occupancy” within the meaning of General Business Law § 352-eeee, a statute governing rights under cooperative conversions of rental units. The issue in De Kovessey was whether the fiduciaries in their representative capacities succeeded to the right to purchase the units in question at the insider’s price. The Court concluded that the statute did not contemplate allowing such a right to the fiduciaries. Recognizing that the insider’s price was inevitably a windfall to the tenant and that there were policy reasons prompting the Legislature to allow such a windfall to tenants, the Court nevertheless concluded that such reasons did not apply to the estate of a tenant who had died (see also Matter of Rubinstein, supra).
The De Kovessey court had thus adopted a restrictive statutory reading in order to prevent a windfall to one party at the expense of the other. Accordingly, De Kovessey is clearly not suited as authority for the ALJ’s ruling in Broadway Assoc., which resulted in a windfall rather than averting one.
Finally, it is noted that the ALJ observed that “the Loft Law should be read in pari materia with the Rent Stabilization Code, which does not provide a right to compensation to the estate.” But the Rent Stabilization Code does not provide such right to anyone.
Based upon the foregoing, it is concluded that the executrix’s affirmative defense based on a right of setoff for the value of fixtures installed by decedent states a claim. Accordingly, the landlord’s motion to dismiss such defense is denied.
The executrix also claims a right to a setoff for decedent’s security deposit and interest. The landlord does not deny that it is *797 holding such deposit and acknowledges that the executrix has a right to reduce the rent arrears payable by the amount of such deposit. It argues, however, that as a matter of law it is not required to pay interest on such fund.
As a general rule, absent a special contractual provision between the parties, where (as here) the building in question has fewer than six dwelling units a landlord has no obligation to keep a tenant’s security deposit in an interest-bearing account (General Obligations Law § 7-103 [2-a]). The Rent Stabilization Code creates an exception to such rule under certain circumstances (9 NYCRR 2525.4). Whether or not the executrix can ultimately prove that the security deposit in this case comes within such exception, she has stated a legally cognizable claim in this respect, and the landlord’s motion to dismiss such defense is accordingly denied.
The executrix also alleges a breach of the landlord’s implied warranty of habitability which the landlord moves to dismiss on several grounds. The first is that it received no notice of the alleged breach and that, as a matter of some unidentified law, the absence of such notice is fatal to such defense.
By express provision of the Real Property Law, every residential lease or rental agreement, written or oral, contains an implied warranty of habitability consisting of three covenants on the part of the landlord: (1) that the premises are “fit for human habitation,” (2) that the premises are fit for “the uses reasonably intended by the parties,” and (3) that the occupants will not be subjected to conditions that are “dangerous, hazardous or detrimental to their life, health or safety” (Real Property Law § 235-b [1]). Such covenants are in no way diminished by the rent-stabilization system (Park W Mgt. Corp. v Mitchell, 62 AD2d 291 [1978]).
Notwithstanding the landlord’s argument to the contrary, a tenant can assert her rights under such warranty without need to give prior written notice to the landlord. Indeed, case law has established that such a prerequisite would run “counter to the intent and spirit of section 235-b,” and would indirectly “divest them of an inalienable substantive statutory safeguard” (Vanderhoff v Casler, 91 AD2d 49, 51 [1983]).
The landlord next claims that it is in the dark as to the nature of the alleged breaches. Nevertheless, the landlord surmises that the executrix’s allegations must be the same as those complained of in an action currently pending in the Supreme Court, New York County, between the landlord and three other *798 tenants. Whatever the accuracy of such conjecture, it is noted that, as a practical matter, specifics might have been obtained if the landlord had not elected to forgo discovery. Nevertheless, the landlord should not be presented with a claim or an affirmative defense expressed only in the most conclusory terms that give no notice of the basic facts amounting to such a breach (Spallina v Giannoccaro, 98 AD2d 103 [1983]). Accordingly, the landlord’s motion to dismiss such affirmative defense is granted unless, within 14 days of the date on which the Clerk of the Court mails a copy of this decision to each of the parties, the executrix files and serves an amended answer in which such defense is particularized (CPLR 3013).
Finally, the executrix seeks leave to amend her answer to include a counterclaim in conversion (CPLR 3025 [b]). By the express terms of section 3025 (b), leave to amend a pleading should be “freely given” absent prejudice to the other party. The conversion that is the subject of the proposed amendment involves decedent’s personal effects and furniture that the landlord allegedly prevented the fiduciary from reclaiming from the apartment. It is not clear from her papers whether the executrix seeks recovery for a temporary withholding of such property or for its permanent loss. In either event, given the landlord’s failure to indicate any prejudice that would result, the executrix is given leave to add such counterclaim within the time allowed her above for filing an amended answer.