[772 NYS2d 665]

In the Matter of KSLM-Columbus Apartments, Inc., Appellant, v New York State Division of Housing and Community Renewal, Respondent, and Westgate Tenants Association et al., Intervenors-Respondents.

First Department, February 26, 2004

APPEARANCES OF COUNSEL

*Rosenberg & Estis, P.C. (Nicholas Kamillatos* and *Blaine Z. Schwadel* of counsel), for appellant.

*Eliot Spitzer, Attorney General (Oren L. Zeve* and *Marion R. Buchbinder* of counsel), for respondent.

*Himmelstein, McConnell, Gribben, Donoghue & Joseph (Kevin R. McConnell, Mary Traynor, Serge Joseph* and *William J. Gribben* of counsel), for intervenors-respondents.

## OPINION OF THE COURT

NARDELLI, J.P.

In this appeal we are called upon to review respondent New York State Division of Housing and Community Renewal's determination that, following petitioner KSLM-Columbus Apartments, Inc.'s exit from the Mitchell-Lama program in March 1998, its housing accommodations, which were constructed prior to 1969, became subject to rent stabilization by virtue of the Rent Stabilization Law of 1969, rather than the Emergency Tenant Protection Act of 1974.

Petitioner KSLM-Columbus Apartments, Inc. (KSLM) is the owner of the residential apartment buildings designated as 160 West 97th Street, 120 West 97th Street and 135 West 96th Street, New York, New York (the buildings). Respondent New York State Division of Housing and Community Renewal (DHCR) is the regulatory agency charged with the responsibility of administering the rent stabilization laws and code (*see Matter of Rent Stabilization Assn. of N.Y. City v New York State Div. of Hous. & Community Renewal*, 252 AD2d 111, 113 [1998]).

Westgate Housing Corporation (Westgate), a limited profit housing company, originally constructed and financed the buildings through article II of the Private Housing Finance Law, which is commonly referred to as the Mitchell-Lama Law. The

Mitchell-Lama Law was enacted in 1955 in order to encourage the development of low- and middle-income housing in blighted areas by offering state and municipal assistance to developers in the form of long-term, low-interest, government-funded loans, real estate tax exemptions and other financial incentives. The developers, in return, agreed to abide by restrictions on rent, profit, disposition of property and tenant selection (*see* Private Housing Finance Law §§ 11, 20-23, 28, 31, 33; *see also Matter of Columbus Park Corp. v Department of Hous. Preservation & Dev.*, 80 NY2d 19, 23 [1992]).

The Mitchell-Lama Law initially provided that limited profit housing companies were prohibited from withdrawing the property from the program for a period of 35 years, and then only with the consent of the Housing Commissioner. A 1960 amendment to the law, however, provided for the voluntary withdrawal from the program 20 years after the building's occupancy date without the consent of regulatory officials. The amendment, according to Senator MacNeil Mitchell, one of the principal sponsors of the law, was prompted by the Legislature's realization that the 35-year prohibition against voluntary withdrawal, coupled with the additional burden of having to obtain permission to withdraw from housing officials, was a major deterrent to private developers who might otherwise enter the Mitchell-Lama program (*see West 95 Hous. Corp. v New York City Dept. of Hous. Preservation & Dev.*, 2001 WL 664628, 2001 US Dist LEXIS 7784 [SD NY, June 12, 2001], *affd* 31 Fed Appx 19 [2002]).

Westgate dissolved in March 1979 and was restructured into KSLM, which assumed the rights and obligations, under the Private Housing Finance Law, as the owner and operator of the buildings. KSLM, in March 1998, after participating in the Mitchell-Lama program for more than the requisite 20-year minimum, dissolved as a Private Housing Finance Law limited profit housing company and restructured as a New York business corporation. There is no dispute among the parties that as a result of the March 1998 dissolution, the Private Housing Finance Law no longer governed the buildings and, for the first time, all of the apartments became subject to rent stabilization. It is at this juncture that we must enter the legislative quagmire which encompasses the New York City and New York State rent control laws (*see generally City of New York v New York State Div. of Hous. & Community Renewal*, 97 NY2d 216, 219 [2001] [describing the rent control laws as a "thicket"]; *La Guardia v*

*Cavanaugh*, 53 NY2d 67, 70 [1981] [in which the Court opines that its analysis requires it to "make some order of this morass"]; *Matter of 89 Christopher v Joy*, 35 NY2d 213, 220 [1974] [in which Chief Judge Breitel characterized the "patchwork" of rent-control legislation as "an impenetrable thicket, confusing not only to laymen but to lawyers"]).

In 1946, the New York State Legislature enacted the Emergency Housing Rent Control Law (L 1946, ch 274) in response to a critical housing shortage caused, primarily, by the return of a large number of veterans following the end of the Second World War, and in anticipation of the lifting of federal housing controls which were in place during the war (*see La Guardia v Cavanaugh, supra* at 71).

The Rent Stabilization Law was enacted by the New York City Council in 1969 (*see* Administrative Code of City of NY § 26-501 *et seq.*) as the result of a continuing housing shortage and the need to regulate buildings previously omitted from the rent control laws. The Rent Stabilization Law (the RSL) was designed to encourage future housing construction by permitting owners to implement reasonable rent increases; to prevent the exaction of "unjust, unreasonable and oppressive rents"; and to "forestall profiteering, speculation and other disruptive practices" (RSL § 26-501; *see also Matter of Missionary Sisters of Sacred Heart, Ill. v New York State Div. of Hous. & Community Renewal*, 283 AD2d 284, 287 [2001]; *Matter of 300 W. 49th St. Assoc. v New York State Div. of Hous. & Community Renewal*, 212 AD2d 250, 254 [1995]). The RSL applied, in pertinent part, to:

> "Class A multiple dwellings not owned as a cooperative or as a condominium . . . containing six or more dwelling units which:
>
> "(1) *were completed after February first, nineteen hundred forty-seven, except dwelling units* (a) owned or leased by, or financed by loans from, a public agency or public benefit corporation, (b) *subject to rent regulation under the private housing finance law or any other state law"* (RSL § 26-504 [a] [1] [a], [b] [emphasis added]).

Thus, the buildings in question herein would have been captured into the rent stabilization system pursuant to the RSL had they not been specifically exempt from that law due to their status under the Private Housing Finance Law.

In 1971, the State Legislature, in an effort the DHCR characterizes as an "experiment with free-market controls," and which was later vilified in a State Assembly debate as having caused "outrageous damage," enacted the Vacancy Decontrol Law (L 1971, ch 371), which liberated newly vacated apartments from rent regulation, notwithstanding whether the apartments had previously been subject to rent control or rent stabilization.

The "experiment," however, was short-lived and in 1974, the State Legislature, once again recognizing the need for rent regulation due to an "acute shortage of housing accommodations caused by continued high demand," and that tenants "are being charged excessive and unwarranted rents and rent increases" (McKinnney's Uncons Laws of NY § 8622 [L 1974, ch 576, sec 4, § 2]), enacted the Emergency Tenant Protection Act ([the ETPA] L 1974, ch 576, § 4 [Uncons Laws § 8621 *et seq.*]). In *La Guardia v Cavanaugh* (*supra* at 74-75), the Court of Appeals described the ETPA "not [as] a rent and eviction regulating law," but as "an enabling act, which empowered New York City . . . to extend rent stabilization." In order for the ETPA to apply to New York City housing, however, it was necessary for the New York City Council to declare a housing emergency in its jurisdiction (*id.* at 75). The City Council so acted in June 1974.

The question at the heart of this appeal is whether the provisions of the ETPA, or only those of the original RSL, apply to the apartments herein once KSLM opted out of the Mitchell-Lama program.

Upon KSLM's dissolution as a Private Housing Finance Law limited profit housing company and its reformation as a New York business corporation, it was required to comply with the initial rent regulation requirements delineated in Rent Stabilization Code (RSC) (9 NYCRR) § 2521.1 (j). That section mandates that for occupied apartments, "the initial legal regulated rent shall be the rent charged to and paid by the tenant in occupancy on the date such regulation ends." For vacant apartments, the "rent shall be the most recent rent approved by the supervising agency, which shall be subject to all increases permitted by law and this Code." (*Id.*)

An owner, generally, may seek adjustments to the initial base rent by way of either of two mechanisms: RSC § 2522.4 (b) and (c), which evaluate "hardship" by basing increases on the relationship between the annual rent and a calculation of either the

annual net income or the annual operating expenses of the building; or RSL § 26-513 (a), which was enacted simultaneously with the ETPA, and which provides, in relevant part:

> "The tenant or owner of a housing accommodation made subject to this law by the emergency tenant protection act of nineteen seventy-four may, within sixty days of the local effective date of this section or the commencement of the first tenancy thereafter, whichever is later, file with the commissioner an application for adjustment of the initial legal regulated rent for such housing accommodation. The rent commissioner may adjust such initial legal regulated rent upon a finding that the presence of unique or peculiar circumstances materially affecting the initial legal regulated rent has resulted in a rent which is substantially different from the rents generally prevailing in the same area for substantially similar housing accommodations."

The former vehicle, RSC § 2522.4 (b) and (c), may be used by those entities to which the RSL applies directly because they meet the pertinent criteria, i.e., six or more dwelling units, construction completed after February 1947, and issued a certificate of occupancy on or before March 10, 1969. In contrast, the only entities which may utilize RSL § 26-513 (a) are those which are subject to the RSL by virtue of the ETPA.

In May 1998, KSLM submitted an application to the DHCR, pursuant to RSL § 26-513 (a), for an adjustment in initial regulated rents. The DHCR acknowledges that KSLM's application was the first it received for housing accommodations which had converted from the Private Housing Finance Law program to the private sector.

The DHCR Rent Administrator (the RA), by three separate, virtually identical decisions (one was issued for each building), dated February 18, 2000, denied KSLM's application, without addressing its merits, reasoning that:

> "Given that the subject building was built before 1969, it became subject to the Rent Stabilization Law not by virtue of the Emergency Tenant Protection Act of 1974 but by virtue of the Rent Stabilization Law of 1969 when the building left the Mitchell-Lama program. As section 26-513a only applies to a housing accommodation made subject to the RSL by

the ETPA, Section 26-513a does not apply to the subject housing accommodation."

KSLM thereafter filed a petition for administrative review (the PAR) with the DHCR and presented four central arguments: contrary to the decision of the RA, it was not a question of when the buildings were constructed, but, rather, when they became subject to rent stabilization which, in this case, was after the 1974 enactment of the ETPA; the DHCR's own code, specifically RSC § 2520.11, mandates that the ETPA apply to rentals previously regulated under the Private Housing Finance Law; under the RA's interpretation, if the ETPA did not apply to the apartments at all, then those apartments vacated after 1971 were decontrolled by the 1971 Vacancy Decontrol Law, and never reregulated by the ETPA; and the obvious intent of the ETPA and RSL § 26-513 (a) was to enable owners to obtain an upward rent adjustment following restrictive rent regulation, and its purpose could not have been to exclude a small percentage of owners based solely on such an arbitrary distinction as the date the buildings were constructed.

The DHCR Deputy Commissioner assigned to this matter (the DC), in a decision issued on January 25, 2001, denied the PAR and found that KSLM's arguments were "based on a misconstruction of the relevant provisions of the RSL and the ETPA." The DC opined, inter alia, that both the plain language and "historical context" of the applicable laws indicate that the ETPA permitted the regulation of certain apartments under the RSL, whereas the RSL itself applied, on its own terms, to certain buildings, such as those herein, regardless of the ETPA's existence. With regard to KSLM's assertion that the Vacancy Decontrol Law of 1971, which was never repealed, must apply if the ETPA is deemed nonapplicable, the DC offered, in conclusory fashion, that KSLM's argument begs the question. "The fact is that the subject accommodations were not subject to the RSL between June 30, 1971 and June 30, 1974, therefore none of them could be deemed removed from regulation under the RSL based on a vacancy occurring during that period." The issue of why apartments which have become vacant since KSLM's withdrawal from the Mitchell-Lama program do not fall under the Vacancy Decontrol Law, given the ETPA's purported inapplicability, was never addressed.

KSLM subsequently commenced the within CPLR article 78 proceeding on or about March 21, 2001, seeking an order annulling the DHCR's determination on the grounds that it was

arbitrary, capricious and contrary to controlling law. KSLM thereafter served an amended petition on or about July 3, 2001.

KSLM's arguments before Supreme Court were, essentially, the same as those advanced on its PAR. KSLM also submitted three letters, dated prior to the PAR determination, one authored by then DHCR Commissioner Donald M. Halperin, and two by the DC who issued the PAR determination, which it claimed supports its argument that the DHCR's official policy had been that owners of former Mitchell-Lama apartments could apply and obtain initial rent adjustments under the ETPA. The Westgate Tenants Association and its Chairperson, Jean Dorsey, had, in the interim, obtained leave to intervene, arguing, inter alia, that many of its members could not afford the increases KSLM was seeking.

Supreme Court, in a judgment entered on June 12, 2002, denied and dismissed the petition. Supreme Court found, inter alia, that the DHCR's interpretation and application of the ETPA, the RSL, and its own code were rational, and KSLM's claim that the apartments became stabilized by virtue of the ETPA upon the date the Private Housing Finance Law exemption ended to be "a leap in logic based on nothing more than wishful thinking." Supreme Court adjudged that "it makes as much (if not more) sense that these buildings completed before March 10, 1969 would be governed by the RSL of 1969 rather than the ETPA once their [Private Housing Finance Law] exemption expired." Supreme Court further rejected KSLM's claim concerning the applicability of the Vacancy Decontrol Law of 1971, and found the letters authored by the DC and the Commissioner to be of a general, qualified nature and unpersuasive.

KSLM appeals and we now reverse.

The applicable law is well settled in that while the correct interpretation of a statute is ordinarily an issue of law for the courts, " '[a]n administrative agency's interpretation of the statute it is charged with implementing is entitled to varying degrees of judicial deference depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute' " (*Matter of Gruber* [*New York City Dept. of Personnel—Sweeney*], 89 NY2d 225, 231 [1996] [citation omitted]; *see also Matter of New York City Council v City of New York*, 4 AD3d 85 [2004]). In those instances where the question involves specialized " 'knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences

to be drawn therefrom,' the courts should defer to the administrative agency's interpretation unless irrational or unreasonable" (*Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359, 371 [1999], quoting *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]).

In contrast, where "the question is one of pure statutory reading and analysis, dependent only on an accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (*Kurcsics v Merchants Mut. Ins. Co., supra* at 459; *see also Matter of New York Botanical Garden v Board of Stds. & Appeals*, 91 NY2d 413, 418-419). In such a case, the courts are "free to ascertain the proper interpretation from the statutory language and legislative intent" (*Matter of Gruber*, 89 NY2d at 231-232; *see also Seittelman v Sabol*, 91 NY2d 618, 625 [1998]), and may undertake the function of statutory interpretation without any deference to the agency's determination (*Matter of Albano v Board of Trustees of N.Y. City Fire Dept., Art. II Pension Fund*, 98 NY2d 548, 553 [2002]; *see also Matter of Moran Towing & Transp. Co. v New York State Tax Commn.*, 72 NY2d 166, 173 [1988] ["Ultimately . . . legal interpretation is the court's responsibility; it cannot be delegated to the agency charged with the statute's enforcement."]).

We first turn our attention to the provisions of the ETPA, which is at the core of this matter. Section 3 of the ETPA provides, in relevant part, that its jurisdiction extends to:

"any class or classes of housing accommodations . . . *exempted from* regulation and control under the provisions of the emergency housing rent control law, the local emergency housing rent control act or *the New York city rent stabilization law of nineteen hundred six-nine*" (subd [a]; emphasis added).

There is no dispute that the apartments in question were exempt from the RSL of 1969 by virtue of their participation in the Mitchell-Lama program. Moreover, as noted above, the ETPA became effective in the City of New York upon the enactment of a resolution of emergency by the New York City Council on June 4, 1974. In that resolution of emergency, the City Council declared the existence of a public emergency requiring the regulation of the residential rents for classes of housing accommodations "heretofore destabilized; heretofore or hereafter decontrolled, exempt, not subject to control, *or exempted from*

*regulation and control under the provisions of . . . the [New York] City rent stabilization law"* (emphasis added).

Both the City Council resolution, and the ETPA itself, provide for the regulation, under the ETPA, of housing accommodations previously exempted from the RSL, and neither the State Legislature nor the City Council endeavored to qualify that application by the building's year of construction. We must, therefore, conclude that the Legislature's failure to include such an arbitrary, prohibitive restriction was intentional (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 74; *Pajak v Pajak*, 56 NY2d 394, 397 [1982]; *Matter of Turner*, 307 AD2d 828, 830 [2003]).

The Court of Appeals decision in *Matter of Zeitlin v New York City Conciliation & Appeals Bd.* (46 NY2d 992 [1979]) is instructive. The Court therein held that the ETPA applied to an apartment which had enjoyed a temporary partial professional use exemption from the city rent law, reasoning that:

> *"The language of both section 3 of the ETPA and the City Council resolution implementing that act in New York City are clear and unambiguous, including as they do any housing accommodations exempted from regulation under the prior provisions.* This apartment is certainly a housing accommodation, for the use of two rooms of a nine-room residential apartment for professional purposes does not remove the apartment from the broad category of residential housing accommodations. *Hence, since this apartment was exempted from regulation under the prior rent control provisions, it is subject to the ETPA"* (*id.* at 995 [emphasis added]).

We also find the DHCR's own code to be enlightening. RSC § 2520.11 states, in relevant part:

> "This Code shall apply to all or any class or classes of housing accommodations *made subject to regulation pursuant to the RSL or any other provision of law, except the following housing accommodations for so long as they maintain the status indicated below*: . . .
>
> "(c) housing accommodations for which rentals are fixed by the DHCR or HPD, unless, after the establishment of initial rents, the housing accommodations are made subject to the RSL pursuant to

applicable law, or housing accommodations subject to the supervision of the DHCR or HPD under other provisions of law or the New York State Urban Development Corporation, or buildings aided by government insurance under any provision of the National Housing Act to the extent the RSL or any regulation or order issued thereunder is inconsistent with such act. *However*, housing accommodations in buildings *completed or* substantially rehabilitated *prior to January 1, 1974, and whose rentals were previously regulated under the [Private Housing Finance Law] or any other State or Federal law, other than the RSL or the City Rent Law, shall become subject to the ETPA, the RSL and this Code, upon the termination of such regulation"* (emphasis added).

Notably, the clear language of the Code provides that buildings completed before January 1, 1974, and previously regulated by the Private Housing Finance Law, shall become subject to the ETPA *and* the RSL. It tellingly makes no mention of a five-year window governing the applicability of the ETPA, i.e., buildings constructed before January 1, 1974, but not before 1969. While the DHCR argues, unpersuasively, that it can be interpreted that both statutes or just the RSL apply, we disagree, as the ETPA was an enabling act which was designed to extend rent stabilization and amend the RSL (*see La Guardia v Cavanaugh, supra* at 74-75; *West 95 Hous. Corp. v New York City Dept. of Hous. Preservation & Dev., supra*; L 1974, ch 576). The ETPA, therefore, is not a separate statute, but one designed to coexist with the RSL and, it follows then, that the statutes are referred to in the conjunctive.

In view of the foregoing, we find that the language of section 3 of the ETPA, as well as the emergency resolution of the City Council which adopted it, renders the legislative intent clear on its face: that is, the ETPA applies to the buildings herein which were constructed prior to 1969, had never been subject to the RSL, having been exempt from its provisions by virtue of the Mitchell-Lama Law, and which opted out of the Private Housing Finance Law exemption after the ETPA's enactment. To the extent that the DHCR's interpretation of the ETPA differs, we owe that interpretation no deference. With regard to RSC § 2520.11, we do not agree with the DHCR's reading of its language and, in any event, even if the DHCR's understanding of the code was accurate, it would not be enforceable as an

administrative agency may not, in the exercise of its rule-making authority, promulgate a regulation out of harmony with the plain meaning of the statutory language (*Festa v Leshen*, 145 AD2d 49, 55 [1989]; *Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.*, 104 AD2d 223, 225 [1984], *affd* 66 NY2d 298 [1985]).

We note the DHCR's somewhat quixotic argument that had it not been for the Private Housing Finance Law exemption in the RSL, "KSLM's buildings would be regulated under the RSL not the ETPA." While true, this assertion is a legal nullity as the exemption did, in fact, exist.

A review of former Commissioner Halperin's and the DC's letters indicates their awareness that housing developments emerging from a more stringent state or federal regulatory system, such as the Private Housing Finance Law, should be entitled to use that as a basis for the "unique or peculiar circumstances" requirement necessary to apply for an initial rent adjustment under RSL § 26-513 (a). Thus, the DHCR, at least at some point, was aware of the economic disadvantage a building owner would encounter upon losing its Mitchell-Lama financing and tax incentives. To now discount such a disadvantage based upon an arbitrary factor such as the date the building was constructed, without any support in the statutes for such a distinction is, in our view, irrational. Moreover, such an egregious result would certainly dampen any future interest by developers who might be inclined to participate in government subsidized housing programs, but who might very well abstain in view of the arbitrary economic hardships imposed by the DHCR.

We also find the DHCR's reasoning regarding the applicability of the Vacancy Decontrol Law to the apartments herein to be irrational. The DHCR found that because of KSLM's participation in the Mitchell-Lama program, those units that became vacant between June 30, 1971 and June 30, 1974 (the window in which the Vacancy Decontrol Law applied prior to the enactment of the ETPA) were exempt from the RSL and were not deregulated, and thus there was no need to apply the ETPA to those units. Yet, as KSLM points out, DHCR's order is based on the inherently contradictory reasoning that apartments in the KSLM buildings are now subject to RSL jurisdiction to the exclusion of ETPA jurisdiction, but not subject to the RSL for the purposes of vacancy deregulation. Thus, in light of such contradictory logic, DHCR's determination is irrational. If we

were to adopt the DHCR's determination that the ETPA is inapplicable, it would appear, at the very least, that those apartments which became vacant after KSLM's exit from the Mitchell-Lama program should now fall under the Vacancy Decontrol Law and, subsequently, the ETPA.

Finally, we find the DHCR's reliance on *Federal Home Loan Mtge. Corp. v New York State Div. of Hous. & Community Renewal* (87 NY2d 325 [1995]) to be misplaced. In *Federal Home*, the Court addressed the issue of whether units in a rent-stabilized building that was converted to cooperative ownership in 1986 would revert to units subject to rent stabilization upon foreclosure of the cooperative's underlying mortgage and the return of the building to rental housing. The Court answered in the affirmative, and opined that "[c]onsistent with the treatment of other regulatory exemptions, once the reason for the exemption expires or is removed, the building should be treated as all other like buildings subject to regulation" (*id.* at 334). The Court added that to find otherwise "would be inconsistent with the overarching goal of the regulatory scheme, which is to protect tenants—who would otherwise be vulnerable to New York City's housing crisis—from eviction and spiraling rents" (*id.*).

*Federal Home*, however, is not analogous to this matter as the Court did not address the interplay between the RSL and the ETPA, but rather the applicability of rent stabilization to the buildings in question. In addition, to the extent that the DHCR relies on the Court of Appeals' statement that the buildings should be treated "as all other like buildings subject to regulation," we agree that KSLM's buildings should be treated like all other buildings departing the Mitchell-Lama program, regardless of the date of construction. Indeed, the ETPA, and its own code, so provide.

Accordingly, the judgment of the Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered June 12, 2002, which denied and dismissed the petition to annul a determination of respondent DHCR, dated January 25, 2001, which found that, following their exit from the Mitchell-Lama program, petitioner's buildings became subject to rent stabilization by virtue of the RSL of 1969, rather than the ETPA of 1974, should be reversed, on the law, without costs, the petition granted and the matter remanded to the DHCR for consideration of petitioner's application for adjustment of initial rent pursuant to Rent Stabilization Law § 26-513 (a).

MAZZARELLI, SULLIVAN, ROSENBERGER and LERNER, JJ., concur.

Judgment, Supreme Court, New York County, entered June 12, 2002, reversed, on the law, without costs, the petition granted and the matter remanded to the Division of Housing and Community Renewal for consideration of petitioner's application for adjustment of initial rent.