OPINION OF THE COURT
Walter B. Tolub, J.
This is a CPLR article 78 proceeding by which petitioners, tenants of Knickerbocker Village, seek to annul the determination of the Commissioner of the New York State Division of Housing and Community Renewal (DHCR) to (1) permit the owners of Knickerbocker Village to dissolve; (2) withdraw the property from regulation under article 4 of the New York State Private Housing Finance Law; and (3) transfer the property to a private corporation. The Commissioner cross-moves for an order dismissing the petition.
Facts
Knickerbocker Village Tenants Association, Henry Chan, Susan Chong and Al Molinet (petitioners) brought this proceeding challenging the final order of the Commissioner of the DHCR, consenting to the voluntary dissolution of Knickerbocker Village, Inc. (KVI).
KVI was organized in 1934 as a limited dividend housing company pursuant to the State Housing Law of 1926. As a limited dividend housing company, KVI is now subject to article 4 of the Private Housing Finance Law.
KVI is the owner of a 1,590 apartment development located at 10-40 Monroe Street on the Lower East Side of Manhattan, known as Knickerbocker Village. The complex consists of 12 buildings and occupies a full city block. The complex was intended, and continues to provide housing to persons of low income.
On August 5, 2002, KVI submitted its application for voluntary dissolution pursuant to Private Housing Finance Law § 82 (12). Private Housing Finance Law § 82 (12) provides that a housing company may not voluntarily dissolve without first having obtained the consent of the Commissioner. KVI planned to dissolve and transfer Knickerbocker Village to Cherry Green Corp., a private corporation, or to reconstitute KVI itself as a private corporation and remove Knickerbocker Village from DHCR regulation under Private Housing Finance Law article 4.
After receiving KVFs application, the DHCR advised that it would process the application under the dissolution regulations *757 under 9 NYCRR 1750.1 et seq. and resolve all issues raised by the application in that context. In January 2003, the tenants of Knickerbocker Village commenced an action captioned, Reyna-Torres v Knickerbocker Village, Inc., index No. 100550/03 (prior action) seeking a declaration that KVT could not, even with DH-CR’s consent, dissolve and withdraw Knickerbocker Village from regulation under Private Housing Finance Law article 4. The prior action additionally sought a declaration that KVI could not transfer Knickerbocker Village to a private entity not subject to article 4. The tenants in the prior action claimed that unlike Mitchell-Lama housing companies organized under Private Housing Finance Law article 2, Private Housing Finance Law article 4 does not permit a housing company organized prior to 1962 to sell or transfer real property to a private entity. More significantly, the statutory scheme set forth in Private Housing Finance Law article 4 bars such dissolution and transfer even with the Commissioner’s consent. A motion by KVI and the tenants for summary judgment followed. The DHCR countered this motion with a motion to dismiss on the grounds that primary jurisdiction lies with the agency, that the tenants were required to exhaust administrative remedies first and that the DHCR should be allowed to determine the issues arising in connection with the KVT application, including whether it had jurisdiction to rule on the application.
In an order dated February 11, 2004, the presiding judge found that, because the statutory authority of the DHCR was in dispute, it was not necessary to exhaust administrative remedies. However, the judge directed that the motion be held in abeyance pending receipt of further submissions including a memorandum of law together with affidavits and exhibits. DHCR subsequently moved for reargument, asserting that it had not yet decided whether it had the jurisdiction to permit an owner to dissolve and withdraw from Private Housing Finance Law article 4 regulation. By order dated December 10, 2004, the court vacated and modified its prior order, dismissed the proceeding and remanded the matter to the Commissioner for reconsideration of KVTs application.
After holding public meetings and accepting written submissions from both sides, the DHCR, on January 13, 2006, issued a “Commissioner’s Consent,” holding that it had the statutory authority to consent to dissolution of KVI, impose conditions on the consent and to permit the transfer of the property to a private entity. (Petitioners’ exhibit E.) The Commissioner noted:
*758 “Knickerbocker Village is a privately owned and privately managed housing project ... It was completed in 1934, and it is the only rental development originally constructed as a limited dividend project under DHCR supervision, all other such projects having been released from supervision by virtue of their dissolution, to which DHCR previously consented in the 1970’s and 1980’s.
“The Development receives no state subsidy. It has always had a private non-subsidized mortgage. It was initially subject to government regulation under the State Housing Law adopted in 1926, whereby in exchange for agreeing to government supervision, Knickerbocker Village received an abatement in real estate taxes. That abatement expired in 1954, fifty-two years ago. Upon dissolution, the Development will be subject to Rent Stabilization Law.”
The Commissioner stated that for guidance she looked to the spirit of “more modern programs” which had limited regulatory programs (petitioners’ exhibit E). The Commissioner concluded that it does not serve the public interest to continue to supervise article 4 housing companies after the expiration of tax benefits where the development, upon dissolution, will be subject to protection under the Rent Stabilization Law.
With respect to the argument presented here, that the DHCR lacks the authority to transfer Knickerbocker Village to a private entity, the Commissioner reasoned that inasmuch as the Commissioner has the power to dissolve, it had the unfettered power to transfer the underlying property. The Commissioner concluded that the proffered argument lacked merit as “[n]othing in Private Housing Finance Law Section 82 contains such a limitation, nor can any such limitation be found in Article IV of the Private Housing Finance Law.” (Commissioner’s consent report at 3.) This court declines to follow what it considers an insupportable leap of logic. Simply put, the fact that the DHCR has the authority to dissolve a company does not mean that the DHCR may transfer the property to whomever it pleases. The Commissioner fails to take into account the prohibition contained in Private Housing Finance Law, article 4, § 82 (2). It is this court’s conclusion that the DHCR lacks both the statutory authority and jurisdiction to permit KVI to transfer real property to anyone other than to a municipality or other limited dividend company.
*759 Discussion
At the outset, the court recognizes, and both parties concede that KVI may voluntarily dissolve, albeit with the consent of the Commissioner. The ultimate question and the crux of the dispute between the parties is whether KVI, after dissolution, is subject to Private Housing Finance Law § 82 (2), thereby requiring the transfer of property to the municipality, in this case the City of New York, or to another housing company formed under the Private Housing Finance Law.
This question requires the court to examine the applicable statutory provisions. As such, the arbitrary and capricious standard of review does not apply to the DHCR’s determination. (Matter of KSLM-Columbus Apts. v New York State Div. of Hous. & Community Renewal, 6 AD3d 28 [1st Dept 2004].) More importantly, as the court in the prior proceeding correctly noted, where the statutory authority of the agency is in dispute, a question of law is presented which must be determined by the courts and not the agency. (Matter of First Natl. City Bank v City of N.Y. Fin. Admin., 36 NY2d 87 [1975].)
Private Housing Finance Law, article 4, § 82 (12), originally State Housing Law § 38 (10) (as added by L 1926, ch 823), states that no housing company shall voluntarily dissolve without first having obtained the consent of the commissioner. Private Housing Finance Law, article 4, § 82 (2) states that no housing company shall:
“(2) Sell, exchange, transfer or assign any real property except (a) to a municipality wherein a project is to be located, for public purposes only and upon such terms and conditions with or without compensation, as the commissioner may approve, or with the written consent of the commissioner to another housing company formed under this chapter.” (Emphasis added.)
The 1926 Statute
Faced with a lack of affordable housing in 1926, the Commission of Housing and Regional Planning submitted a report to then Governor Smith to address “Permanent Housing Relief.” This report found that as a result of the high prices of labor, materials and other economic conditions, no new low rental apartments were being constructed, and many of the existing tenements had become either obsolete, uninhabitable or were simply being demolished to make way for new buildings *760 encroaching upon these neighborhoods. (Bill Jacket, L 1926, ch 823; 4 Public Papers of Governor Smith at 147.) In effect, and much like today, these costs favored the construction of commercial and more expensive residential buildings to the exclusion of reasonably priced housing. (Id.)
Concluding that a housing problem existed and needed to be addressed, the Legislature sought to create a way to make profitable the construction of homes for wage earners of low income. It also enacted the State Housing Law to “promote the public health and safety by providing for the elimination of unsanitary and dangerous housing conditions, to relieve congested areas, and the construction and supervision of dwellings and for the letting of apartments at reasonable rentals.” (Senate Proposal to Assembly of Bill dated Apr. 23, 1926, Bill Jacket, L 1926, ch 823.)
The widespread belief was that the main obstacle to private capital for this class of housing was the cost of borrowing money and the slow and expensive process of acquiring sufficient land to conduct profitable building operations on a large scale (Bill Jacket, L 1926, ch 823; 4 Public Papers of Governor Smith at 149). Recognizing that sufficient private capital could not be attracted to undertake the difficult task of reconstructing tenement areas in New York, the Legislature concluded that part of the solution would be to create limited dividend housing companies which were intended to “benefit from the power of condemnation which vests in the state and municipalities.” (See Bill Jacket, L 1926, ch 823; 4 Public Papers of Governor Smith at 172.)
In short, the purpose of the statute was to provide low income housing, utilizing the State’s power of condemnation as well as offering tax abatement. The trade-off, however, was that upon dissolution, the transfer to a private entity was prohibited. That provision, Private Housing Finance Law § 82 (2), has never been altered or amended.
KVI itself was created in 1934 subject to regulation by the State Board of Housing. In consideration for agreeing to such regulations, KVI was given restrictions as well as benefits, including a tax abatement, which the court notes, expired in 1954.
The Amendments
The respondent relies on 1962 and 2003 amendments to the Private Housing Finance Law for the proposition that Private *761 Housing Finance Law § 82 (2) is no longer viable. The Private Housing Finance Law was amended in 1962 and provides, inter aha, that a housing company organized after April 1, 1962 under article 4 might voluntarily dissolve without the consent of the commissioner, reconstitute as a private entity and that thereafter the restrictive provisions of the Private Housing Finance Law would not apply (Private Housing Finance Law § 96). At the outset the court notes that the statute, by its terms, specifically states that it was applicable to companies organized after 1962.
Indeed, the Legislature stated, and the statute provides in section 97, referable to corporations in existence prior to the enactment of the statute, that
“[S]uch companies shall not be affected by the provisions of this article, but the same shall continue to be governed by the provisions of chapter eight hundred twenty-three of the laws of nineteen hundred twenty-six and amendatory acts thereto, and for such purposes, such chapter and amendatory acts thereto shall continue to be in full force and effect.”
Finally, the respondent argues, albeit unpersuasively, that Private Housing Finance Law § 93 (7), enacted in 2003, demonstrates that pre-1962 article 4 housing companies are no longer subject to regulation after their tax exemptions expire. The new subdivision reads as follows:
“Any project that received a tax exemption under this section may, upon the expiration of the tax exemption period, be granted an additional tax exemption period of up to fifty years, or until such time as the project is no longer operated under the restrictions and for the purposes set forth in this article, whichever is sooner.”
The Legislature enacted Private Housing Finance Law § 93 (7) in order to encourage owners not to leave the Mitchell-Lama program. (NY State Assembly Mem in Support of Legislation, Bill Jacket, L 2003, ch 389.) The statute granted municipalities the authority to grant Private Housing Finance Law housing companies the option to extend their tax benefits for another 50 years. Because the statute was arguably referable to both pre- and post-1962 companies, respondent argues that somehow Private Housing Finance Law § 82 (2) was repealed. The argument fails, however, because the statute does not deal with the *762 issue of transferability, is specifically referrable to Mitchell-Lama housing and more significantly, the Legislature did not take the opportunity to repeal Private Housing Finance Law § 82 (2).
A court cannot by implication supply in a statute a provision which is reasonable to suppose the Legislature intended to intentionally omit. (Weed v Tucker, 19 NY 422 [1859].) The failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended. (McKinney’s Cons Laws of NY, Book 1, Statutes § 74.) The nature of the language in the Private Housing Finance Law and the legislative history are such that the failure to expressly override the provisions of the statute indicate an intention not to overturn a long established rule of law. (Seligman v Friedlander, 199 NY 373 [1910].) If the Legislature intended that Private Housing Finance Law § 82 (2) would not apply after dissolution, it could have done so.
The conclusion, that Private Housing Finance Law § 82 (2) limits transferability upon dissolution, is buttressed in part by the dicta and reasoning contained in Matter of Knickerbocker Vil. v Boyland (16 AD2d 223 [1st Dept 1962]). Boy land was a tax certiorari proceeding involving Knickerbocker Village. The court in both the majority and minority opinions found, albeit in dicta, that KVI’s right to transfer its property was severely restricted. In his dissent, Justice Breitel specifically cited the Private Housing Finance Law § 82 (2) predecessor statute, Public Housing Law § 179 (2), for the proposition that the property in question could not be marketed other than to specific public or regulated entities (16 AD2d at 230). This court agrees.
Conclusion
The Legislature, in its wisdom, has never repealed or amended Private Housing Finance Law, article 4, § 82 (2). And as this court has previously had the occasion to note, the role of the Judiciary is limited to enforcing statutes. The Judiciary does not sit as a super-legislature empowered to weigh the wisdom, reasonableness or desirability of legislation. (SHAD Alliance v Smith Haven Mall, 66 NY2d 496 [1985]; Amsterdam-Manhattan v City Rent & Rehabilitation Admin., 43 Misc 2d 889 [Sup Ct 1964].)
As a matter of policy, it may be in the public interest to privatize Knickerbocker Village, although such a move clearly flies in the face of the current administration’s avowed commitment to *763 expand and stabilize affordable apartments in the city. However, it is for the State Legislature and/or the City to take such action as it deems appropriate to effectuate a transfer to the private sector. It is not within the purview of the Commissioner of DHCR or this court.
The court therefore concludes that although the Commissioner could consent to KVTs dissolution, the Commissioner has no statutory authority to permit a transfer to a private entity.
Accordingly, it is ordered that petitioners’ motion to annul the Commissioner’s order to dissolve and withdraw the property from regulation under article 4 of the Private Housing Finance Law is granted to the extent that although the Commissioner may consent to dissolution, the transfer of title is limited to the City of New York or another limited dividend housing company; and it is further ordered that respondent’s cross motion to dismiss is denied.