OPINION OF THE COURT
Carol R Edmead, J.
In this consolidated action,[1] petitioner 207 Realty Associates, owner of an apartment building located at 207 West 110th Street in Manhattan (the building), moves pursuant to CPLR article 78 to annul the final orders issued by respondent New York State Division of Housing and Community Renewal (DHCR) under administrative review docket Nos. VC-420022-RO (Nov. 15, 2007); VD-420001-RO; VD-420003-RT (Feb. 12, 2008); VC-420021 (Mar. 18, 2008); and VC-420041-RO (Mar. 18, 2008) on the ground that those orders are arbitrary, capricious and contrary to law.
Background
The building, located on Central Park North, contains seven apartments that are subject to the New York City Rent and Rehabilitation Law. In 1999, petitioner filed an application with DHCR pursuant to section 2202.7 of the New York City Rent and Eviction Regulations (9 NYCRR) (regulations)[2] seeking an adjustment in the legal rents for the rent-controlled units in the building. The application was based on “unique and peculiar circumstances” that resulted in rents being substantially lower than rents for similarly situated housing accommodations (U&P adjustment). In August 2005, after years of administrative and judicial proceedings, petitioner was granted a substantial U&P adjustment to the legal rent for the rent-controlled apartments. In an effort to reduce the hardship on the rent-controlled tenants of having to pay the U&P adjustment in one lump sum, DHCR ordered the petitioner to phase in the adjustment in four equal annual installments.
*511 In 2004 and 2006, petitioner filed regular biennial applications with DHCR for increases in the maximum base rent (MBR) and maximum collectible rent (MCR) for each of the rent-controlled apartments. DHCR issued orders approving the 2004 and 2006 applications and granting petitioner increases of 71/2% per year in 2004, 2005, 2006 and 2007. In addition, petitioner applied for and received an adjustment pursuant to 9 NYCRR 2202.4 based on major capital improvements (MCI) that it made to the building.
In August 2005, four rent-controlled tenants, William Harding, William Hodges, John Sims and Elgenia Mitchell (collectively the tenants) filed separate rent overcharge complaints claiming that the 2004/2005 MBR/MCR increases were improper because the August 2005 decision granting the U&P adjustment determined the maximum rents for each of the subject apartments as of March 1, 2004. The tenants took the position that each tenant’s rent was set by DHCR in that August 2005 order and, therefore, there was no basis for an additional increase.
In November 2007 and February and March 2008, the Rent Administrators issued their orders on the overcharge complaints finding that the August 9, 2005 U&P adjustment order capped the MCRs on the March 1 adjustment dates for the years 2004-2007, and that therefore the annual U&P adjustment had to be reduced by the amount of the authorized annual MCR and MCI adjustment so that the annual increase didn’t exceed the cap in the August 2005 order.
Petitioner filed petitions for administrative review (PARs) challenging the Rent Administrators’ orders on the ground, inter alla, that there is nothing in the regulatory scheme or any of the orders that would authorize DHCR to reduce the U&P adjustment by the regular MCR and the MCI amounts. In the PAR, petitioner took the position that the annual U&P adjustment should have been added to the annual MCR increase and the MCI adjustment.[3]
In the orders under review in this proceeding, the DHCR Deputy Commissioner denied the owner’s PARs in their entirety, finding that:
“The Commissioner finds that the Rent Administrator’s interpretation of the August 9, 2005 order as *512 capping the MCRs on the March first phase-in dates, regardless of the subsequently-issued Division orders, was reasonable, given that the unique and peculiar rent increases have been substantial; and, that the tenants had a reasonable expectation that the rents on the March first, rent phase-in dates would not be later increased. . . .
“The Commissioner further notes that because the MCRs and MBRs were established using a comparability study that used the rents of other apartments in other buildings and that had different rent histories from those apartments in the subject building and given that the unique and peculiar provisions of the rent control law have given this owner substantial relief, the Division is not required to compute the legal rent in the same manner as in a case where unique and peculiar circumstances do not apply.” (Return, exhibit D-l Harding, apartment 5;[4] return, exhibit D-2 Sims, apartment 6; return, exhibit D-3 Hodges, apartment 27; return, exhibit D-4 Mitchell, apartment 30.)
Thereafter, petitioner timely filed this article 78 proceeding.
Statutes and Regulations
The New York City Rent and Rehabilitation Law and the regulations require two calculations when determining the rents for rent-controlled apartments. The MBR, or maximum base rent, is the rent ceiling for an apartment and the methodology for the calculation of this figure, and for the calculation of MCR, maximum collectible rent, is set forth in New York City Rent and Rehabilitation Law (Administrative Code of City of NY) § 26-405 (a) (3). 9 NYCRR 2201.5, titled “Biennial adjustment of maximum rents,” states: “(a) Effective January 1, 1974 and biennially thereafter, the administrator shall adjust the maximum rent for each housing accommodation subject to these regulations to reflect the changes, if any, in the components of the maximum gross building rental defined in section 2201.4(b) of this Part.”
According to the statute and regulation, an owner may apply for an increase in the MBR every two years, and if it meets DHCR’s criteria, an MBR increase is granted.
*513 The criteria for the second component, the MCR, or maximum collectible rent, are embodied, in part, in 9 NYCRR 2201.6 (a) (1) which states:
“No new maximum rent established pursuant to section 2201.4 of this Part, or adjustment pursuant to section 2201.5, 2202.7, 2202.8, 2202.9 or 2202.10 of this Title, or any combination thereof, shall increase the rent collectible from a tenant in occupancy by more than 7x/2 percent in any one calendar year, except as provided in section 2202.7 of this Title.”
9 NYCRR 2202.7 provides:
“The administrator may grant an appropriate adjustment of maximum rent where he finds that the presence of unique or peculiar circumstances materially affecting the maximum rent has resulted in a maximum rent which is substantially lower than rents generally prevailing in the same area for substantially similar housing accommodations; provided that the adjustment shall not result in a maximum rent higher than the rents generally prevalent in the same area of substantially similar housing accommodations.”
Contentions
In support of the petition, 207 Realty argues that there is no legal authority to support the Deputy Commissioner’s limitation of the rent adjustments; that the relevant statutes and regulations permit the petitioner to increase the legal rent by the full amount of the annual U&P adjustment as well as the MBR/MCR increase and the MCI adjustment as long as the resulting rent doesn’t exceed the generally prevailing rent for comparable housing; and that DHCR’s reliance on 9 NYCRR 2201.6 (a) (1) to justify its previous orders is misplaced. In addition, for the first time in its reply brief, petitioner argues that DHCR’s argument based on 9 NYCRR 2201.6 (a) (1) should not be considered by the court because DHCR failed to raise this argument in the administrative proceedings.[5]
In opposition to the petition, DHCR contends that the agency interprets 9 NYCRR 2201.6 to grant the owner one 71/2% *514 increase in a calendar year which includes an increase pursuant to 9 NYCRR 2202.7. DHCR takes the position that the “except” language in 9 NYCRR 2201.6 (a) (1) only applies when a U&P adjustment is granted on its own. It also argues that DHCR properly considered the hardship on the tenants in determining the maximum rents.
Discussion
On judicial review of an agency action under CPLR article 78, the courts must uphold the agency’s exercise of discretion unless it has no rational basis or the action is arbitrary and capricious. (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230-231 [1974].) “The arbitrary or capricious test chiefly relates to whether a particular action should have been taken or is justified . . . and whether the administrative action is without foundation in fact. Arbitrary action is without sound basis in reason and is generally taken without regard to the facts.” (Pell, 34 NY2d at 231 [citation and internal quotation marks omitted].)
Although an agency’s interpretation of the statutes and regulations it is responsible for administering is entitled to deference (Matter of Partnership 92 LP & Bldg. Mgt. Co., Inc. v State of N.Y. Div. of Hous. & Community Renewal, 46 AD3d 425 [1st Dept 2007]), the Court of Appeals has stated that where “the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency.” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; see also Matter of SIN, Inc. v Department of Fin. of City of N.Y., 126 AD2d 339, 344 [1st Dept 1987] [“the clear language of the statute cannot be changed by an appeal to administrative expertise”].)
Moreover, “[t]he interpretation of a regulation is subject to judicial review, and the ultimate responsibility of interpreting the law is that of the court . . . Thus, where the interpretation of a regulation is irrational or unreasonable, a[n administrative agency’s] determination will be annulled.” (Matter of New York SMSA Ltd. Partnership v Town of Islip Planning Bd., 300 AD2d 307, 309 [2d Dept 2002] [internal quotation marks omitted].)
In Matter of KSLM-Columbus Apts, v New York State Div. of Hous. & Community Renewal (6 AD3d 28, 36 [1st Dept 2004]) the Court opined that
*515 “where the question is one of pure statutory reading and analysis, dependent only on an accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency. In such a case, the courts are free to ascertain the proper interpretation from the statutory language and legislative intent, and may undertake the function of statutory interpretation without any deference to the agency’s determination.” (Citations and internal quotation marks omitted.)
Moreover, it is well established that a statute should be given “a sensible and practical over-all construction, which is consistent with and furthers its scheme and purpose and which harmonizes all its interlocking provisions.” (Matter of Long v Adirondack Park Agency, 76 NY2d 416, 420 [1990].)
“In analyzing the various parts of a statute, ‘a statute or ordinance must be construed as a whole and ... its various sections must be considered together and with reference to each other.’ ” (Vink v New York State Div. of Hous. & Community Renewal, 285 AD2d 203, 209 [1st Dept 2001] [citation omitted].)
The purpose and intent of the New York City Rent and Rehabilitation Law is to balance the interests of owners in having sufficient capital to maintain and improve their buildings, while protecting tenants from unwarranted, illegal and oppressive rents. (See NY City Rent and Rehabilitation Law [Administrative Code of City of NY] § 26-405 [b].) Here, petitioner seeks to collect MCR rent increases and an MCI adjustment granted by DHCR in addition to a U&P adjustment. Accordingly, the question before the court is whether the plain language of 9 NYCRR 2201.6 (a) (1) and 2202.7, considered together and with reference to each other (see People v Mobil Oil Corp., 48 NY2d 192 [1979]), permits petitioner to collect the full annual U&P adjustment as well as the full annual MBR/MCR increases and the MCI adjustment.
First, the court notes that 9 NYCRR 2201.6 (a) (1) does not include the MCI adjustment pursuant to 9 NYCRR 2202.4 (c) in its 7V2% limitation. Accordingly, pursuant to the doctrine of inclusio unius est exclusio alterius (“the inclusion of one is the exclusion of another”), the MCI adjustment should not be considered in the 71/2% limitation. (See e.g. Thoreson v Penthouse Intl., 179 AD2d 29 [1st Dept 1992].)
As to the U&P adjustment, the clear language of 9 NYCRR 2201.6 (a) (1) excepts a U&P adjustment from the Ph% limita *516 tian as long as the MCR increase and the U&P adjustment, together, comply with 9 NYCRR 2202.7’s mandate that the adjustment “shall not result in a maximum rent higher than the rents generally prevalent in the same area of substantially similar housing accommodations.” Here, DHCR has not demonstrated that the MCR increase and the U&P adjustment, together, will result in a maximum rent that is higher than similar accommodations in the same area.
Moreover, DHCR’s interpretation of the statute would lead to an inequitable result. In 2005, petitioner was granted a U&P adjustment to bring the rents of its rent-controlled apartments in line with the March 1, 2004 rents of comparable housing units. DHCR considered the hardship on the tenants by phasing in the U&P adjustment over four years. However, the agency now seeks to eviscerate the U&P adjustment, to the landlord’s detriment, by reading the regulations to require that the annual U&P adjustment be reduced by the MCR increase so that the total annual increase does not exceed 71/2%. Under this interpretation, the combination of the lengthy phase-in period for the U&P adjustment combined with the reductions in the annual U&P amounts would lead to a virtual obliteration of the U&P adjustment and result in rents that are once again substantially below prevailing rents in the area for similar accommodations. In Matter of KSLM-Columbus Apts, v New York State Div. of Hous. & Community Renewal (6 AD3d at 38-39), the Court accorded DHCR’s interpretation of a statute “no deference” where DHCR’s interpretation would lead to an “egregious result.” In that case, the Court noted that “an administrative agency may not, in the exercise of its rule-making authority, promulgate a regulation out of harmony with the plain meaning of the statutory language.” {Id.)
Here, 9 NYCRR 2201.6 (a) (1) and 2202.7 must be read conjunctively to render an equitable result. The purpose of the U&P provision is to bring rents, which had been artificially depressed due to “unique and peculiar circumstances,” in line with similarly situated housing accommodations. DHCR’s interpretation of the regulations, which would allow these rents to once again fall below the levels of similarly situated housing, is contrary to the purpose and intent of the rent regulations. (See e.g. Matter of Schmidt v Roberts, 74 NY2d 513 [1989].) Accordingly, it appears that DHCR’s interpretation of the relevant regulations is arbitrary and capricious as the agency has failed to demonstrate that the administrative orders are supported by *517 fact or law or that they further the purpose and intent of the rent regulations to ensure that owners have sufficient capital to maintain and improve their buildings while protecting the tenants from oppressive rents.
Conclusion
Therefore, it is ordered that the petition is granted to the extent that the matter is remanded to DHCR to either demonstrate, through a comparability study, that the annual U&P adjustment together with the annual MCR increase and MCI adjustment would result in maximum rents higher than the rents generally prevalent in the same area of substantially similar housing accommodations, or if the rents do not exceed rents generally prevalent for similar accommodations, to grant petitioner’s PARs in the Rent Administrator docket numbers at issue in this proceeding.

. By order dated June 19, 2008, this court consolidated the above-captioned action with 207 Realty Assoc., LLC v New York State Div. of Hous. & Community Renewal (index No. 105268/08).

. 9 NYCRR parts 2200-2211 govern rent-controlled apartments located within New York City. The regulations were enacted by DHCR pursuant to authority granted by the New York City Rent and Rehabilitation Law.

. Harding also filed a PAR challenging the Rent Administrator’s order based on a September 8, 2006 stipulation that his apartment contained five, not six rooms. In the PAR he took the position that his maximum collectible rent should he reduced to reflect the stipulated room count.

. The Deputy Commissioner granted Harding’s PAR in part, reducing the MCR for his apartment based on the stipulated room count.

. This argument raised for the first time in reply, will not be considered by the court. (See Schiulaz v Arnell Constr. Corp., 261 AD2d 247, 248 [1st Dept 1999].)