■ In the Matter of FREDERICK FOGELMAN, Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Respondent. [903 NYS2d 455]—

In a proceeding pursuant to CPLR article 78 to review a determination of the New York State Department of Environmental Conservation dated April 17, 2007, that a certain parcel of real property owned by the petitioner was not eligible for inclusion in the Brownfield Cleanup Program (ECL art 27, tit 14), the petitioner appeals from a judgment of the Supreme Court, Suffolk County (Molia, J.), dated December 22, 2008, which denied the petition and dismissed the proceeding.

Ordered that the judgment is affirmed, with costs.

The petitioner, Frederick Fogelman, is the owner of a parcel of real property located in Farmingdale. The parcel has two street addresses, 965 Conklin Street and 937 Conklin Street, which correspond to two buildings on the parcel. In 1993 and 1994, Suffolk County officials discovered, among other things, the presence of tetrachloroethene (also known as tetrachloroethylene, perchloroethylene, PERC, or PCE) and other chemical solvents in a storm drain on the site. In 2000 the entire parcel was listed in a registry maintained by the New York State Department of Environmental Conservation (hereinafter the DEC) as a class 2 inactive hazardous waste site (see ECL 27-1305 [1], [2]).

In 2004 Fogelman submitted an application to the DEC for the site's inclusion in the Brownfield Cleanup Program (hereinafter the BCP) (see ECL 27-1401 et seq.). That program provides certain benefits to parties who agree to clean up contaminated properties for the purpose of redevelopment, including a liability release and covenant not to sue from the State of New York, to be issued upon satisfactory cleanup of the site (see ECL 27-1421; *Matter of Lighthouse Pointe Prop. Assoc. LLC v*

*New York State Dept. of Envtl. Conservation*, 14 NY3d 161, 165-167 [2010]). Owners of properties that are listed as class 1 or 2 inactive hazardous waste sites are generally ineligible for inclusion in the BCP (*see* ECL 27-1405 [2] [a]). However, such properties are eligible for inclusion in the BCP if the owner at the time of application is a "volunteer," defined as an individual whose liability with respect to the site "arises solely as a result of such person's ownership or operation of or involvement with the site subsequent to the disposal or discharge of contaminants," provided that the person takes reasonable steps to stop ongoing releases of contaminants, prevents future releases, and prevents or limits exposure to previously released contamination (ECL 27-1405 [1] [b]).

Here, the DEC rejected Fogelman's application on the grounds, inter alia, that there was evidence contained in records maintained by the Suffolk County Department of Health (hereinafter the DOH) that hazardous waste was improperly discharged on the property in 1993, and that "high levels of tetrachloroethene were detected" at the property in 1994. It is undisputed that, during 1993 and 1994, Fogelman was both an owner and operator of the property.

"[I]n a proceeding seeking judicial review of administrative action, the court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the decision or whether it is arbitrary and capricious" (*Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363 [1987]; *see* CPLR 7803 [3]). "[W]here . . . the judgment of the agency involves factual evaluations in the area of the agency's expertise and is supported by the record, such judgment must be accorded great weight and judicial deference" (*Flacke v Onondaga Landfill Sys.*, 69 NY2d at 363).

Here, the DEC did not arbitrarily and capriciously determine that the petitioner failed to qualify as a "volunteer" for purposes of the BCP (*see* ECL 27-1405 [1]). It is undisputed that the petitioner both owned and operated the entire site from 1984 through the time of the BCP application. The record contains evidence of, among other things, improper disposal of paint and waste oils at or near the 965 Conklin Street building in 1993. In this regard, contrary to the petitioner's contention, the DEC properly considered the site as a whole in considering the BCP application, including the 965 Conklin Street portion of the site, as the entire site was listed as a Class 2 Inactive Hazardous Waste Site at the time of the application (*see* ECL 27-1405 [1] [a]; [2] [b]).

In addition, a DOH inspection revealed evidence of "high levels of tetrachloroethene" contamination at the property in 1994, in particular at a storm drain behind the building at 937 Conklin Street. In 2000 the entire site was listed on the Inactive Hazardous Waste Disposal Site Registry as a class 2 site, based on the "presence of very high levels of chlorinated volatiles in previous sampling." The notice regarding that determination recited that "[s]ampling conducted in late 1996 . . . confirms that [remedial work] was inadequate with regard to reducing groundwater contamination to levels below the appropriate standard." The petitioner does not dispute the DEC's findings as to the levels of contamination found at the site by the DOH.

Further, contrary to the petitioner's contention, the DEC did not arbitrarily and capriciously determine that the contamination by tetrachloroethene and other solvents originated at the site itself. In particular, the record reveals that the level of tetrachloroethene contamination at the property in 1994 was higher than in the preceding year. In addition, a DEC engineer concluded that the record established that the site itself was the source of the tetrachloroethene contamination. Although an engineering consultant for the petitioner concluded that it was "possibl[e]" that the tetrachloroethene contamination originated off-site, that assertion was largely speculative.

Under these circumstances, the DEC's determination that the property was not eligible for inclusion in the BCP based on, inter alia, the evidence of the petitioner's ownership and operation of the property during a period of time when contaminants were discharged or disposed was not arbitrary and capricious (see ECL 27-1405 [1] [a]; see generally Matter of Muir v Town of Newburgh, N.Y., 49 AD3d 744 [2008]; Matter of Ball v New York State Dept. of Envtl. Conservation, 35 AD3d 732 [2006]). Accordingly, the Supreme Court properly denied the petition and dismissed the proceeding. Fisher, J.P., Dickerson, Eng and Belen, JJ., concur.