Matter of Migliaccio v New York State Div. of Hous. & Community Renewal (2018 NY Slip Op 03132)





Matter of Migliaccio v New York State Div. of Hous. & Community Renewal


2018 NY Slip Op 03132


Decided on May 2, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 2, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
SHERI S. ROMAN
ROBERT J. MILLER
JOSEPH J. MALTESE
COLLEEN D. DUFFY, JJ.


2015-08103
 (Index No. 22110/13)

[*1]In the Matter of Antonio Migliaccio, petitioner- respondent, 
v
New York State Division of Housing and Community Renewal, respondent, Steven Pittarese, appellant.


Thomaidis & Lagoudis, P.C., Bayside, NY (Alex Thomaidis of counsel), for appellant.
Borah, Goldstein, Altschuler, Nahins & Goidel, P.C., New York, NY (Paul N. Gruber of counsel), for petitioner-respondent.



DECISION & ORDER
In a proceeding pursuant to CPLR article 78 to review a determination of the New York State Division of Housing and Community Renewal dated October 31, 2013, which denied a petition for administrative review and affirmed a Rent Administrator's determination that the current maximum collectible rent for the subject apartment is $125 per month, Steven Pittarese appeals from a judgment of the Supreme Court, Kings County (Wavny Toussaint, J.), dated June 4, 2015, which granted the petition, annulled the determination, and remitted the matter to the New York State Division of Housing and Community Renewal to recompute the present day maximum collectible rent.
ORDERED that the judgment is affirmed, with costs.
In March 2000, the petitioner, Antonio Migliaccio, purchased a four-unit residential apartment building located on President Street in Brooklyn. The prior owners had owned the building since 1941 and resided in one of its units, while their family members occupied the other three units. Frances Pittarese, the niece of the prior owners, and her husband, Nicholas Pittarese (hereinafter together the Pittareses), resided in a full-floor, two-bedroom apartment in the building (hereinafter the subject apartment) from 1961 until their deaths in 2008. Throughout their tenancy, the Pittareses paid $125 per month as rent to the prior owners and the petitioner. The Pittareses' son, Steven Pittarese (hereinafter the appellant), who has resided in the subject apartment since his birth in 1983, remained in the subject apartment with his wife following the death of his parents.
In 2009, the petitioner submitted a request for copies of rent-control records from the New York State Division of Housing and Community Renewal (hereinafter the DHCR) for the building. The DHCR responded that there was no record of a registration statement on file with it for the building from 1984 through the present. Additionally, the DHCR informed the petitioner that a "[Maximum Base Rent] file was not found as ever being established for the subject building." Thereafter, in February 2010, the petitioner commenced a holdover proceeding to recover possession [*2]of the subject apartment from the appellant and his wife. However, after conducting an examination before trial of the appellant, the petitioner discontinued the holdover proceeding in October 2010.
In November 2010, the petitioner requested that the DHCR establish a maximum present day rent for the subject apartment, conceding that the appellant had been in occupancy of the subject apartment for the requisite period of time to qualify for succession rights. The petitioner argued that there were unique and peculiar circumstances that must be considered in establishing a maximum rent, namely, that the rent allegedly paid since 1961 was $125 per month, and that the subject apartment operated outside of the rent-control system for almost 60 years without increases because the occupants were related to the prior owner. In a supporting affidavit, the petitioner asserted, among other things, that Nicholas Pittarese had been a friend of his prior to purchasing the building, and that he told Nicholas that he would never ask him to move out of the subject apartment or increase the rent because of their friendship.
On October 12, 2011, the Rent Administrator issued an order finding that the subject apartment was subject to Rent and Eviction Regulations, and that the appellant was entitled to succession rights. The Rent Administrator noted that a review of a registration card, which apparently had been located, indicated that the Pittareses were listed as the rent-controlled tenants of the subject apartment. The Rent Administrator established the maximum collectible rent at $125 per month, which he determined "was the maximum rent paid by the tenant, and agreed to by the owner." Thereafter, the petitioner filed a petition for administrative review (hereinafter PAR). On October 31, 2013, the DHCR denied the PAR and affirmed the Rent Administrator's determination.
In December 2013, the petitioner commenced this proceeding pursuant to CPLR article 78 to review the DHCR's determination. In the judgment appealed from, dated June 4, 2015, the Supreme Court granted the petition, annulled the determination, and remitted the matter to the DHCR to recompute the present day maximum collectible rent. The court found that the DHCR's determination establishing the current maximum collectible rent at $125 per month was arbitrary, capricious, and contrary to law. In this regard, the court determined that the subject apartment had been operated outside the rent-regulation system since at least the early 1960s, as the $125 monthly rent allegedly being paid by the appellant and his parents was not reflected on the rent registration card. In addition, the court concluded that the DHCR's determination was arbitrary and capricious inasmuch as it declined to find that the prior and current owners' failure to seek rent increases since 1961 due to personal relationships with the tenants was a unique or peculiar circumstance warranting an appropriate adjustment of the maximum rent. We affirm the judgment.
In a CPLR article 78 proceeding to review a determination made by an administrative agency such as the DHCR, "the court's inquiry is limited to whether the determination is arbitrary and capricious, or without a rational basis in the record and a reasonable basis in law" (Matter of ATM One, LLC v New York State Div. of Hous. & Community Renewal, 37 AD3d 714, 714; see CPLR 7803[3]; Matter of Velasquez v New York State Div. of Hous. & Community Renewal, 130 AD3d 1045, 1046; Matter of Gomez v New York State Div. of Hous. & Community Renewal, 79 AD3d 878, 878-879). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Murphy v New York State Div. of Hous. & Community Renewal, 21 NY3d 649, 652 [internal quotation marks omitted]; see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231; Matter of 9215 Realty, LLC v State of N.Y. Div. of Hous. & Community Renewal, 136 AD3d 925).
Pursuant to the New York City Rent and Eviction Regulations (9 NYCRR) § 2202.7, "[t]he administrator may grant an appropriate adjustment of a maximum rent where he [or she] finds that the presence of unique or peculiar circumstances materially affecting the maximum rent has resulted in a maximum rent which is substantially lower than rents generally prevailing in the same area for substantially similar housing accommodations." The purpose of this provision "is to bring rents, which had been artificially depressed due to unique and peculiar circumstances,' in line with similarly situated housing accommodations" (Matter of 207 Realty Assoc. LLC v New York State Div. of Hous. & Community Renewal, 22 Misc 3d 509, 516 [Sup Ct, NY County]).
Under the circumstances of this case, we agree with the Supreme Court's conclusion that the DHCR's determination establishing the present day maximum collectible rent at $125 per month for the subject apartment was arbitrary, capricious, and contrary to law. As set forth by the DHCR in its order denying the PAR, the notations contained in the rent registration card for the subject apartment reflect that the prior owners rented to the Pittareses as of September 1, 1961, at a monthly rate of $51.60, with subsequent rent increases to $59.34 effective September 1, 1965, $65.24 effective March 1, 1968, and $78.47 effective July 1, 1970. The DHCR concluded that this evidence "show[ed] that the Pittareses' tenancy was in fact governed by the Rent Control Law," and further determined that if the prior owners had been intent on acting outside of the governing statutes, it was unlikely that they would have registered the appellant's parents as rent-controlled tenants. However, the record reflects that while the prior owners applied for and obtained rent increases between 1961 and 1970, they actually charged the Pittareses $125 per month in rent for the subject apartment commencing in 1961, which was substantially more than the amounts set forth on the registration card. Furthermore, the prior owners did not apply for any further rent increases after 1970, but improperly continued to charge the Pittareses more than the legal registered rent (see 9 NYCRR 2202.1). Thus, contrary to the DHCR's determination, it is clear that the subject apartment has, in fact, operated outside of the rent-regulatory system for decades (see Matter of Santo v New York State Div. of Hous. & Community Renewal, 272 AD2d 334, 335). Moreover, as the court properly determined, the decision of the prior owners and the petitioner not to apply for rent increases due to familial and personal relationships with the Pittareses likewise constituted unique and peculiar circumstances warranting an adjustment of the maximum rent (see id. at 335; see also Matter of Administrative Appeal of Saul Perlstein, DHCR Docket No. FG220278RO [1992]).
In Matter of Santo v New York State Div. of Hous. & Community Renewal (272 AD2d at 335), the tenant, Emma Santo, rented an apartment in the subject premises from her father beginning in about 1946, and they negotiated rent increases over the years without regard to the rent-regulation statutes governing the premises. Santo's father died in 1986, and his wife, who was added to the deed in 1985, subsequently sold the property (see id.). In October 1985, Santo filed a rent overcharge complaint with the DHCR, and the DHCR ultimately set the maximum rent as of November 1, 1983, at $375 per month (see Matter of Santo v New York State Div. of Hous. & Community Renewal, 1999 WL 35125510 [Sup Ct, Queens County]). Thereafter, Santo commenced a CPLR article 78 proceeding seeking to vacate that portion of the DHCR's determination which established the maximum rent as of November 1, 1983, rather than May 1, 1950 (see Matter of Santo v New York State Div. of Hous. & Community Renewal, 1999 WL 35125510). The Supreme Court granted her petition and remitted the matter to the DHCR to recompute the present day maximum rent based upon a base maximum rent of $60, as of May 1, 1950 (see id.).
On appeal, this Court reversed, confirmed the DHCR's determination, which established the apartment's maximum rent as of November 1, 1983, in the sum of $375, and dismissed the proceeding on the merits (see Matter of Santo v New York State Div. of Hous. & Community Renewal, 272 AD2d at 335). In so doing, this Court held that it "cannot ignore the more than three decades of activity which occurred outside the governing statutes" (id.).
Contrary to the position of our dissenting colleagues, even assuming that the petitioner was aware or should have been aware of the subject apartment's rent-controlled status at the time he purchased the building, this factor is not determinative. While an owner's lack of such awareness may be considered in determining the maximum rent (see id.; Matter of Ubl v Goldman, 87 AD2d 823, 825), there is no requirement in 9 NYCRR 2202.7 that an owner lack prior knowledge of the regulated status of its premises in order to receive an increase in the maximum rent. Rather, as set forth above, that provision solely requires "the presence of unique or peculiar circumstances" (9 NYCRR 2202.7), which are present in this case. Those circumstances have resulted in the same monthly rent of $125 being paid for the subject two-bedroom apartment since 1961, which is clearly substantially lower than rents generally prevailing in the same area for substantially similar housing accommodations (see generally 207 Realty Assoc. v New York State Div. of Hous. & Community Renewal, 297 AD2d 569, 570), and "there are issues of fairness and equity" that must be considered in setting an appropriate present day rent for the subject apartment (Matter of Vendome v Lynch, 294 AD2d 198, 198).
The parties' remaining contentions are without merit.
Accordingly, the Supreme Court properly granted the petition, annulled the determination, and remitted the matter to the DHCR to recompute the present day maximum collectible rent.
ROMAN, MILLER and MALTESE, JJ., concur.
DUFFY, J., dissents, and votes to reverse the judgment, on the law and the facts, with costs, confirm the determination of the New York State Division of Housing and Community Renewal dated October 31, 2013, deny the petition, and dismiss the proceeding on the merits, with the following memorandum, in which CHAMBERS, J.P., concurs:
"Judicial review of administrative determinations that were not made after a quasi-judicial hearing is limited to whether the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion" (Matter of North Lake Apts., LP v New York State Div. of Hous. & Community Renewal, 152 AD3d 695, 695; see CPLR 7803[3]; Matter of Riverside Tenants Assn. v New York State Div. of Hous. & Community Renewal, 133 AD3d 764, 766). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Deerpark Farms, LLC v Agricultural & Farmland Protection Bd. of Orange County, 70 AD3d 1037, 1038). The interpretation by the New York State Division of Housing and Community Renewal (hereinafter the DHCR) of the statutes and regulations it administers, if reasonable, must be upheld (see Matter of Riverside Tenants Assn. v New York State Div. of Hous. & Community Renewal, 133 AD3d at 766; Matter of 85 E. Parkway Corp. v New York State Div. of Hous. & Community Renewal, 297 AD2d 675, 676), even where the Supreme Court would have reached a different result (see Matter of Deerpark Farms, LLC v Agricultural & Farmland Protection Bd. of Orange County, 70 AD3d at 1038). Contrary to the determination of my colleagues, the DHCR's determination that the appropriate maximum collectible rent is $125 per month had a rational basis in the record (see Matter of Vendome v Lynch, 294 AD2d 198; Matter of Santo v New York State Div. of Hous. & Community Renewal, 272 AD2d 334, 335) and was not arbitrary and capricious (see Matter of Santo v New York State Div. of Hous. & Community Renewal, 272 AD2d at 335), and thus, the Supreme Court erred in annulling the DHCR's determination. Accordingly, the judgment should be reversed, the DHCR's determination confirmed, the petition denied, and the proceeding dismissed on the merits.
As is relevant to this appeal, in March 2000, the petitioner (hereinafter the owner) purchased a four-unit apartment building in Brooklyn, which contains, inter alia, a two-bedroom, railroad-style apartment that is the subject of this proceeding (hereinafter the apartment). The tenant in the apartment has lived there his entire life; he was born in 1983, and, at that time, his parents were listed as the tenants of record. They had rented the apartment from 1961 until their deaths in 2008, and the tenant continued to live in the apartment after their deaths. From the time that the tenant's parents rented the apartment until March 2000, the building had been owned by the tenant's great aunt. The owner purchased the building from the estate of the tenant's great aunt. At the time of the sale of the building, the tenant's parents paid a monthly rent of $125 for the apartment. After the owner purchased the building, he failed to raise the rent for more than nine years. However, in February 2010, the owner commenced a holdover proceeding against the tenant, which was discontinued without prejudice after the tenant answered the petition alleging that the apartment was subject to rent control and that he had succession rights to the apartment.
In November 2010, the owner commenced an administrative proceeding before the DHCR to establish the appropriate maximum collectible rent. In an order dated October 12, 2011 (hereinafter the Rent Administrator's order), a Rent Administrator for the DHCR indicated that he had reviewed all the evidence in the record, including rent-control registration records from 1943, which contained a 1961 notation listing the tenant's parents as rent-controlled tenants and indicating that the registered rent in that year as $51.60. The records listed the registered rent in 1965 as $59.34, in 1968 as $65.24, and in 1970 as $78.47. The Rent Administrator determined that the apartment was rent controlled, the tenant was entitled to succession rights, and the appropriate [*3]maximum collectible rent was $125 per month, which was the maximum rent paid by the tenant and agreed to by the owner.
Thereafter, in November 2011, the owner filed a timely petition for administrative review of the Rent Administrator's order. The DHCR Deputy Commissioner reviewed the record, including the rent-control registration records, and noted that the owner had not provided closing documents from his purchase of the building in 2000, which the tenant had requested in the holdover proceeding, or any other documents to support his contention that he was unaware of the rent-control status of the apartment when he bought the building. In an order dated October 31, 2013, the DHCR Deputy Commissioner determined that the Rent Administrator properly established the maximum collectible rent to be $125 per month in accordance with regulatory guidelines and the equities of the matter.
The owner then commenced this CPLR article 78 proceeding seeking to vacate the DHCR's determination as arbitrary and capricious. In an order dated June 4, 2015, the Supreme Court granted the owner's petition, finding that the DHCR's determination that $125 per month was the maximum collectible rent for the apartment was arbitrary and capricious, and remitted the matter to the DHCR to recompute the present day maximum collectible rent. For the reasons herein, I disagree with my colleagues and vote to reverse the judgment, confirm the DHCR's determination, deny the petition, and dismiss the proceeding on the merits.
In 1946, the Legislature enacted the Emergency Housing Rent Control Law, determining that a serious public emergency in housing existed and that certain rental practices, such as the imposition of oppressive rents and unjust rental terms, required regulations to be adopted to protect tenants from unfair rental practices (see L 1946, ch 274, § 1; Festa v Leshen, 145 AD2d 49, 51-52). One of the goals of the current rent-control and rent-stabilization statutes is still the protection of the rights of tenants in rent-controlled and rent-stabilized dwellings (see Festa v Leshen, 145 AD2d at 53).
Here, contrary to the finding of the Supreme Court, the DHCR's determination that the Rent Administrator properly found that the maximum collectible rent for the apartment was $125 per month was rationally based on public records showing that the prior owner of the building registered the apartment as rent controlled, with a monthly rent of $51.60 in 1961, and that the prior owner applied for and obtained regulated rent increases in 1965, 1968, and 1970. The record also established that the owner affirmatively failed to obtain any rent increases for the apartment from the time he purchased the building until more than nine years later.
The fact that the subject apartment was owned for a long time by a relative of the tenant, who did not apply for any type of rent increase for several decades, and then by the owner, who did not seek a rent increase for almost a decade, does not, in and of itself, justify the owner's attempt, in one fell swoop, to reset the rent to an amount equal to that of a similar-sized, non-rent-controlled apartment in that area. These circumstances do, however, fully justify the determination of the DHCR to continue the "longstanding practice" of the tenant to pay a rent of $125 per month, even though that rate was almost double the last registered rent of $78.47, which had been set in 1970 (Matter of Administrative Appeal of Saul Perlstein, DHCR Docket No. FG220278RO [1992]; see Matter of Santo v New York State Div. of Hous. & Community Renewal, 272 AD2d 334).
Although the DHCR found credible the assertion that the owner forbore from increasing the rent due to his friendship with the tenant's parents, the DHCR, in assessing the credibility of the owner's claim that he had no knowledge of the apartment's rent-controlled status when he purchased the building in 2000, made the following observations: "Although the owner claimed to have not been notified of the rent regulated status of the subject apartment before the closing of the building sale in March 2000, the tenant's attorney alleged in his answer that the owner's holdover proceeding was discontinued only after the tenant requested an inspection of the actual contract of sale and all memoranda regarding the disclosures and understandings had between the owner-petitioner and the seller. The tenant's attorney set forth his suspicion that . . . within those documents was a representation and therefore an understanding and acknowledgment as to the [*4]status of the apartment and the monthly rent collected for same.' The Commissioner finds that the owner's failure to provide the requested documentation in this proceeding, as well as an affidavit from the sellers (Vincent Izzo, in particular) regarding the representations that were made or not made, lends support to the tenant's suspicion."
"In determining whether an administrative action is arbitrary and capricious, courts do not decide credibility issues or weigh evidence" (Matter of Prestige Towing & Recovery, Inc. v State of New York, 74 AD3d 1606, 1607). Because the Supreme Court was required to accept the conclusion of the DHCR that the owner was aware or should have been aware of the apartment's rent-controlled status at the time he bought the building, it erred in granting the petition and remitting the matter to the DHCR for a determination of the appropriate present day maximum collectible rent (see Matter of Santo v New York State Div. of Hous. & Community Renewal, 272 AD2d at 335; Matter of Ubl v Goldman, 87 AD2d 823, 825). Indeed, it would be contrary to rent-control regulations "to reappraise the maximum rent when, knowing the property was subject to rent control, the landlord neglected for years to apply for an increase or a reevaluation" (Matter of Ubl v Goldman, 87 AD2d at 825; see e.g. Matter of Epstein v Herman, 19 AD2d 74, 76-77).
Thus, based on the equities in the matter, there is nothing arbitrary, capricious, or irrational in the determination of the DHCR to set the maximum collectible rent at $125 per month in accordance with the parties' longstanding practice, and with the expectation that the owner will "file for the establishment of a computed Maximum Base Rent for the subject apartment" to begin the process of adjusting the rent in accordance with applicable rent-control regulations (see 9 NYCRR part 2202) based on the owner's actual operating costs and expenses.
As noted supra, " [i]n a proceeding seeking judicial review of administrative action, the court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the decision or whether it is arbitrary and capricious'" (Matter of Fogelman v New York State Dept. of Envtl. Conservation, 74 AD3d 809, 810, quoting Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363). When applying the standards for an order adjusting a maximum rent—which specifically include the provisions of 9 NYCRR 2202.7 pertaining to "unique or peculiar circumstances," on which the majority relies—the regulatory framework imposes an overarching requirement "that the adjustment can be put into effect without dislocation and hardship inconsistent with the purposes of the Rent Law" (9 NYCRR 2202.3[a][1]). Here, the determination of the DHCR in this case fully comports with this requirement, which further strengthens the conclusion that it had a rational basis and is not arbitrary and capricious. Moreover, my colleagues' assertion that unique or peculiar circumstances resulted in a maximum rent of $125 which "is clearly substantially lower than rents generally prevailing in the same area for substantially similar housing accommodations" is wholly improper and assumes facts not in the record. There is no evidence in this record to support a conjecture that the rent at issue is below market value for comparable rent-controlled apartments.
Furthermore, even if, as contended by my colleagues, the facts of this case somehow constituted "unique or peculiar" circumstances, two of the cases relied upon by the majority—Matter of Santo v New York State Div. of Hous. & Community Renewal (272 AD2d 334) and Matter of Administrative Appeal of Saul Perlstein (DHCR Docket No. FG220278RO)—dictate that the appropriate remedy would be to do what the DHCR in fact did, which was to set the monthly maximum collectible rent at the customary rate of $125 that had been agreed to by the parties. Specifically, in Matter of Administrative Appeal of Saul Perlstein (DHCR Docket No. FG220278RO), the DHCR determined that the facts of that case constituted "unique or peculiar circumstances," but nevertheless set the monthly maximum collectible rent at $250 based on the "longstanding practice" of the tenant who paid a monthly rate of $250. Likewise, in Matter of Santo v New York State Div. of Hous. & Community Renewal (272 AD2d at 335), this Court upheld as rational the determination of the DHCR to set a maximum monthly rent of $375, which was in line with the rent actually paid by the tenant for many years and the amount the tenant had contended to be fair (see Matter of Santo v New York State Div. of Hous. & Community Renewal, 1999 WL 35125510 [Sup Ct, Queens County]). In fact, there, this Court reversed the Supreme Court's remittal of the matter to the DHCR to recompute the maximum collectible rent with increases based upon [*5]a base rent of $60 set in 1950, finding that the DHCR had a rational basis for setting the maximum collectible rent at the amount that had long been paid (see Matter of Santo v New York State Div. of Hous. & Community Renewal, 272 AD2d at 335). Thus, these cases cited by the majority actually support the proposition that the determination of the DHCR to set the maximum collectible rent at the amount that had been paid pursuant to the long-standing practice of the parties is rational and should not be disturbed.
Accordingly, I would reverse the judgment of the Supreme Court, confirm the DHCR's determination, deny the petition, and dismiss the proceeding on the merits.
ENTER:
Aprilanne Agostino
Clerk of the Court